IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EUGENE V. BOUTHNER, JR. *et al.*,   *

   Plaintiffs,   *

      v.   *   Civil Action No. RDB-11-244

CLEVELAND CONSTRUCTION INC, *et al.*,   *

   Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Eugene V. Bouthner, Jr., Paul J. Isom and Jose M. Mancia (collectively, "Plaintiffs") bring this action on behalf of themselves and other similarly situated employees and/or former employees against Defendants Cleveland Construction, Inc. ("CCI"), Servicemax, Inc., Kurt Antonio Boyd, Margaret Sherman Boyd, FAS Consultants, LLC ("FAS"), David R. Trent, Chesapeake Firestop Products, Inc. ("Chesapeake"), and Clifford B. Smith (collectively, "Defendants"). In Count I, Plaintiffs allege that they were misclassified as independent contractors in violation of the Maryland Workplace Fraud Act, Md. Code, Labor & Employment, § 3-901, *et seq*. In Count II, Plaintiffs claim that they were not paid minimum wage and overtime pay in violation of the Maryland Wage and Hour Law, Md. Code, Labor & Employment, § 3-401, *et seq*. In Count III, Plaintiffs assert that they were not paid their full measure of wages for all time worked in violation of the Maryland Wage Payment and Collection Law, Md. Code, Labor & Employment, § 3-501, *et seq*. In Count IV, Plaintiffs contend in the alternative that Defendants had a contractual and equitable obligation to compensate them for their unpaid wages and overtime, and therefore are liable in quantum

1

meruit. In Count V, Plaintiffs argue that Defendants failed to pay them regular and overtime wages in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*.

The original complaint was filed in the Circuit Court for Baltimore City, Maryland on November 18, 2010. Defendants removed the case to this Court on January 28, 2011, pursuant to 28 U.S.C. §§ 1332 and 1441. Pending before this Court is Defendant CCI's Partial Motion to Dismiss (ECF No. 26), Defendants Servicemax, Kurt Antonio Boyd and Margaret Sherman Boyd's Partial Motion to Dismiss (ECF No. 27), Defendants FAS and David Trent's Partial Motion to Dismiss (ECF No. 29), and Defendants Chesapeake and Clifford B. Smith's Partial Motion to Dismiss (ECF No. 30).[1] The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' Partial Motions to Dismiss (ECF Nos. 26, 27, 29 and 30) are GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiffs, present and former employees of Defendants, bring this suit on behalf of themselves and others similarly situated hourly wage earners. Plaintiffs worked for Defendants on construction projects that took place at, among other locations, the National Naval Medical Center ("NNMC")[2] in Bethesda, Maryland and the Johns Hopkins Hospital in Baltimore,

---

[1] Defendants Cleveland Construction, Inc. and Kurt Antonio Boyd, Margaret Sherman Boyd and Servicemax, Inc. previously filed separate Motions to Partially Dismiss the First Amended Complaint. (ECF Nos. 15 and 17.) Since those parties have each filed new Motions to Partially Dismiss the Second Amended Complaint (ECF Nos. 26 and 27), their prior motions relating to the First Amended Complaint are moot.

[2] In their Second Amended Complaint, Plaintiffs mistakenly refer to the NNMC as the Walter Reed Army Medical Center. The NNMC and Walter Reed Army Medical Center recently merged to create the Walter Reed National Military Medical Center.

Maryland. Plaintiffs claim that Defendants misclassified Plaintiffs and the subclass as independent contractors or exempt persons in violation of the Maryland Workplace Fraud Act ("MWFA"), did not compensate Plaintiffs and the class at the minimum wage for each hour worked in violation of the Maryland Wage and Hour Law ("MWHL"), failed to timely and regularly pay Plaintiffs their earned wages in violation of the Maryland Wage Payment and Collection Law ("MWPCL"), and failed or refused to pay them regular and overtime wages in violations of the Fair Labor Standards Act ("FLSA"). Plaintiffs also assert that Defendants should be liable for overtime pay under the common law theory of *quantum meruit*.

Though the Defendants file separate motions to dismiss, they make essentially the same three arguments. First, the complaint should be dismissed as to the state law claims regarding the work performed at the NNMC (Counts I-IV) because those claims are barred by the federal enclave doctrine. Second, the claim for quantum meruit (Count IV) should be dismissed because it is preempted by the Fair Labor Standards Act. Third, the complaint should be dismissed as to the claims against the individual defendants, Kurt Boyd, Margaret Boyd, David Trent and Clifford Smith, (Counts I and III) because no individual liability exists under the Maryland Wage Fraud Act or the Maryland Wage Payment and Collection Law. Thus, Defendants do not move to dismiss the state law claims as to the work done on Johns Hopkins Hospital, which is clearly not on a federal enclave, nor do the Defendants move to dismiss Plaintiffs' claims under the Fair Labor Standards Act, as set forth in Count V.

ANALYSIS

**I.      The State Law Claims are Barred by the Federal Enclave Doctrine**

Defendants argue that the Federal Enclave Doctrine bars Plaintiffs' state law claims arising from work performed at the NNMC. Under the Federal Enclave Doctrine:

> Congress shall have power . . . to exercise Legislation in all Cases whatsoever over such District[s] . . . as may, by Cession of particular States . . . become the Seat of the government of the United States, and to exercise like authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings.

U.S. Const. Art. I, § 8, cl. 17. In other words, the United States acquires exclusive jurisdiction over a federal enclave if it acquires the land by consent of the state legislature. *See Paul v. United States*, 371 U.S. 245, 267 (1963). As Defendants show and Plaintiffs agree, NNMC is located on land that is a federal enclave. Thus, this Court begins by noting that, generally, only federal law applies to the work done at NNMC.

However, in *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988), the Supreme Court explained that there is one exception to the Federal Enclave Doctrine: "activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation." *Id*. at 180 (quoting *EPA v. State Water Resources Control Board*, 426 U.S. 200, 211 (1976)). Plaintiffs contend the Davis-Bacon Act, 40 U.S.C. §§ 3141, *et seq*., provides authorization for the application of state law to claims for wages and benefits by employees of private companies working on contracts related to federal properties. Thus, for Plaintiffs' state law claims to go forward as to the work done at NNMC, the language of the Davis-Bacon Act must show that Congress "clearly and unambiguously" intended for state wage and benefit laws to apply to federal enclaves.

The Davis-Bacon Act establishes the requirement to pay prevailing wages to federal contractors who provide "construction, alteration, and/or repair, including painting and decorating," for every contract over $2,000 on public works projects located anywhere in the United States. 40 U.S.C. § 3142(a). The Davis-Bacon Act provides that:

> The minimum wages shall be based on the *wages the Secretary of Labor determines to be prevailing* for the corresponding classes of laborers and

4

> mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is to be performed there.

*Id*. §§ 3142(a)-(b) (emphasis added). Notably, the Davis-Bacon Act defines the terms "wages" and "prevailing wages" to include both the basic hourly rate of pay and the rate of costs or contribution for:

> medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the forgoing, for unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, for vacation and holiday pay, for defraying the costs of apprenticeship or other similar programs, or for *other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal, state, or local law to provide any of those benefits*.

*Id* at § 3141(2)(B) (emphasis added). Plaintiffs contend that the reference to compliance with state and local laws in the Davis-Bacon Act's definition of "prevailing wages" must mean that Congress intended for employees of private contractors working on federal properties to be protected by state and local laws pertaining to wages and benefits, as otherwise the reference would be superfluous.

As numerous other statutes show, Congress is entirely capable of providing explicit authorization when it intends to permit a state regulation to apply in a federal enclave. For example, in *Goodyear*, the Supreme Court held that the state safety regulation at issue authorized states to enforce their workers compensation laws in federal enclaves because 40 U.S.C. § 290 explicitly says that "States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession." *Goodyear*, 486 U.S. at 185 (quoting 40 U.S.C. § 290). Similarly, the Clean Air Act, 42 U.S.C. § 7401, *et seq*., provides that federal facilities "shall be subject to, and comply with, all Federal, *State, interstate, and local* requirements . . . respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity." 42 U.S.C. § 7418(a)(2)

5

(emphasis added). The Clean Air Act goes on to clarify that this requirement applies "to the exercise of any Federal, *State, or local* administrative authority," "to any process and sanction, whether enforced in Federal, *State, or local courts*, or in any other manner," and "notwithstanding any immunity of such agencies, officers, agents, or employees under any rule of law." *Id*. at § 7418(a)(2)(B)-(D) (emphasis added). Congress has provided similar clear mandates in other, albeit more limited, statutes. *See, e.g.*, 26 U.S.C. § 3305 ("No person shall be relieved from compliance with a State unemployment compensation law on the ground that services were performed on land owned, held, or possessed by the United States"); 4 U.S.C. § 106 ("No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area").

Unlike these statutes, the Davis-Bacon Act does not contain any explicit directives. There is no language in the Davis-Bacon Act expressly stating that Congress intended state wage or benefit laws to apply to contractors who provide certain construction services on public works contracts. Nonetheless, Plaintiffs argue that the reference to state and local laws in the Davis-Bacon Act is clear and unambiguous, because otherwise the state and local laws clause would be superfluous.

Plaintiffs rely upon *Lebron Diaz v. General Security Services Corp.*, 93 F. Supp. 2d 129 (D.P.R. 2000), where the United States District Court for the District of Puerto Rico held that the Service Contract Act, 41 U.S.C. §§ 351-38—a statute with analogous wording to the language at issue in the Davis-Bacon Act[3]—was an exception to the federal enclave doctrine. In that case,

---

[3] The Service Contract Act establishes the requirement to pay prevailing wages—including minimum wages and fringe benefits—to federal contractors who "furnish services" on public works contracts over $2,500. 41 U.S.C. § 351. Notably, the language defining "fringe benefits" in the Service Contract Act and Bacon-Davis Act is almost identical, as the Service Contract Act

6

employees at a federal courthouse brought a lawsuit for unpaid bonuses and sick leave under Puerto Rico law. *Id*. at 130. Defendants contended that the courthouse was a federal enclave and, as in this case, argued that the federal enclave doctrine precluded any claims under local law. *Id*. at 132. Plaintiffs asserted that the language in the Service Contract Act constituted a clear Congressional signal that local regulation of employment benefits within a federal enclave was permissible, just as Plaintiffs argue in the current case with respect to the Davis-Bacon Act.

In dicta, the *Lebron Diaz* Court analyzed the SCA's language, concluding that the Service Contract Act "clearly implies that local laws conferring benefits on workers will be applicable to employees of private companies working at federal installations." *Lebron Diaz*, 93 F. Supp. 2d at 135. Observing that "the question is admittedly close," the Court explained:

> While it is true that the [SCA] does not explicitly state that local laws will apply, no fair reading of the emphasized phrase makes possible any other construction of the language. A message does not have to be *in haec verba* to be "clear and unambiguous." The only reasonable inference to be drawn from the Service Contract Act is that local and state laws were to provide the foundation upon which the Service Contract Act was to be built, to insure that contract employees received certain minimum benefits. The application of local law providing separate and independent employment benefits, such as the law of Puerto Rico here, was unambiguously assumed.

*Id*. at 141-42. Thus, the *Lebron Diaz* Count found that the federal enclave doctrine did not bar recovery of fringe benefits conferred by local law because the only reasonable interpretation of the Service Contract Act is that Congress intended for state and local laws to be applicable to federal enclaves with respect to insuring certain minimum benefits.

Plaintiffs also rely on the recent case, *Ealy v. Pinkerton Government Services, Inc*., Civ. No. 10-775 (D. Md. Jan. 10, 2011) (Messitte, J.), which raised essentially the same question the

---

states that "fringe benefits" include benefits "not otherwise required by Federal, State or local law to be provided by the contractor or subcontractor." *Id*. at § 351(a)(2). *Cf*. Davis-Bacon Act, 40 U.S.C. § 3141(2)(B) (defining "prevailing wages" to include "bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal, state, or local law to provide any of those benefits").

*Lebron Diaz* Court addressed—whether the Service Contract Act establishes that state wage and benefits laws are applicable to federal enclaves. This Court issued an oral opinion at the end of the hearing it held in *Ealy* concluding that the reasoning of *Lebron Diaz* Court was persuasive. *Ealy* Tr. at 57. Judge Messitte explained:

> I'm not persuaded that the federal enclave provision excludes the possibility of there being a clear and unambiguous determination by Congress through the Service Contract Act of the state Wage and Hour laws. I don't say this with one hundred percent conviction, but I would say it with a clear majority conviction, so that's the Court's ruling.

*Id*. at 58. Notably, just like the *Lebron Diaz* Court, Judge Messitte found this to be a "close question." *Id*.

Defendants rely in part upon *Manning v. Gold Belt Falcon*, 681 F. Supp. 2d 574 (D.N.J. 2010), where the United States District Court for the District of New Jersey also analyzed the meaning of the state or local law clause in the Service Contract Act. In *Manning*, employees at a military base brought suit under both the FLSA and New Jersey law for unpaid wages and overtime. *Id*. at 575. Defendants argued that the claims under state law were barred by the federal enclave doctrine, whereas Plaintiffs argued that the Service Contract Act created clear and unambiguous authorization for state minimum wage law to apply in federal enclaves. *Id*. at 576. The *Manning* Court held that "nothing in the Service Contract Act evinces congressional intent to apply state minimum wage laws to federal enclaves, nor is the application of state law to federal property even mentioned." *Id*. at 577. Contrasting the Service Contract Act with the statute in *Goodyear*, the *Manning* Court concluded, "the distinction between the statute in *Goodyear* and the Service Contract Act is obvious: one clearly applies state law to federal land, while the other does not." *Manning*, 681 F. Supp. 2d at 577.

After a thorough review of the language in the Davis-Bacon Act, as well as relevant statutory language and case law, this Court agrees with the reasoning in *Manning*. First, the

8

language in the Davis-Bacon Act does not explicitly authorize state wage and benefit laws to apply to contractors working on public works projects. As described above, Congress has shown that it is capable of including language in statutes expressly stating that states have the power to apply the statute to land ceded to the United States. Thus, the fact that Congress did not include such explicit language in the Davis-Bacon Act makes it difficult to accept Plaintiffs' argument that the phrasing at issue in this case shows Congress's intent that state and local benefits laws apply to federal enclaves. Though "a message does not have to be *in haec verba* to be 'clear and unambiguous,'" *Lebron Diaz*, 93 F. Supp. 2d at 142, the lack of an explicit authorization will often suggest that a statute is not clear and unambiguous.

Second, this Court finds that there is a reasonable interpretation of the Davis-Bacon Act that avoids the superfluousness problem raised by Plaintiffs. As described above, the Davis-Bacon Act defines "prevailing wages" to include benefits such as disability insurance, vacation pay, and "other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal, state, or local law to provide any of those benefits." 40 U.S.C. § 3141(2)(B). Plaintiffs argue that "the statutory references to the contractors' and subcontractors' compliance with State and local laws would be superfluous had Congress not intended for such laws to apply." ECF No. 35 at 8. However, the language of the Davis Bacon Act isn't limited to federal enclaves. Instead, it applies to "public buildings and public works of the Government or the District of Columbia that are located in a State or the District of Columbia." 40 U.S.C. § 3142(a).

Thus, for contracts pertaining to public works projects not in federal enclaves, state or local law can apply.[4] In contrast, if the contract at issue pertains to public works projects on a

---

[4] For example, Defendants do not challenge that Plaintiffs may bring claims under state law as to the work they did at Johns Hopkins.

9

federal enclave, state and local law does not directly apply because Congress has not clearly and unambiguously authorized the application of state or local law. Thus, the reference to state or local law is not superfluous as it will apply to contracts pertaining to public works projects not on a federal enclave.

Furthermore, even if this Court accepted Plaintiffs' interpretation of the Davis-Bacon Act, state and local law would only apply to claims for fringe benefits. Plaintiffs' allegations that they were not paid minimum wage, were misclassified as independent contractors or exempt persons, and were not timely paid their wages, do not directly relate to "fringe benefits." Plaintiffs' allegation that they were not paid overtime also does not amount to a claim for fringe benefits, at least within the meaning of the Davis-Bacon Act. The Act includes a separate provision for determining overtime pay that indicates that Congress did not intend for overtime pay to constitute a fringe benefit. 40 U.S.C. § 3142(e). Thus, Plaintiffs' claims in Count I regarding their alleged misclassification as independent contractors in violation of the Maryland Workplace Fraud Act, in Count II that they were not paid minimum wage and overtime pay in violation of the Maryland Wage and Hour Law, in Count III regarding Defendants' alleged untimely payment of wages in violation of the Maryland Wage Payment and Collection Law, and in Count IV regarding Defendants' liability in *quantum meruit* cannot apply to the work done on the National Naval Medical Center pursuant to the federal enclave doctrine. Accordingly, Defendants' Motion to Dismiss Counts I, II, III and IV as they pertain to work done on NNMC is granted.

## II. FLSA Preempts Plaintiffs' *Quantum Meruit* Claim (Count IV)

Plaintiffs contend in the alternative that Defendants are liable for overtime pay under the common law theory of *quantum meruit*. Defendants argue that the Fair Labor Standards Act,

which requires that employers pay covered workers a minimum wage and overtime pay, preempts this claim. Under the Supremacy Clause, federal law is "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI. Thus, a federal law preempts a state law when "the state law actually conflicts with federal law."[5] *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007) (quotation marks omitted). A state law actually conflicts with a federal law if "it is impossible to comply with both state and federal law or . . . the state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law." *Id.* at 191-92 (internal quotation marks omitted).

In *Anderson v. Sara Lee Corp.*, the United States Court of Appeals for the Fourth Circuit addressed whether the use of common law contract remedies stands as an obstacle to the accomplishment of the full purposes and objectives of the Fair Labor Standards Act. In other words, the Fourth Circuit considered whether common law contract remedies for FLSA violations are precluded by "obstacle preemption."[6] In doing so, the Fourth Circuit rejected plaintiff's characterization of the contract claims as "aris[ing] from an affirmative promise to pay all wages due under the FLSA," *id.* at 193 n.11, and stated that plaintiffs "rel[ied] on the FLSA for their rights, and invoke state law only as the source of remedies for the alleged FLSA violations." *Id.* at 193. The Fourth Circuit held that plaintiff's "FLSA-based contract, negligence, and fraud claims [were] precluded under a theory of obstacle preemption" because

---

[5] This form of preemption—known as "conflict preemption"—should not be confused with "express preemption" and "field preemption." See *Anderson*, 508 F.3d at 191 & n.10.
[6] "Obstacle Preemption" is the term used by the Fourth Circuit to describe the form of conflict preemption in which a "state law stands as an obstacle to the accomplishment of the full purposes and objectives of federal law." *Anderson*, 508 F.3d at 191-192 (internal quotation marks omitted).

11

"Congress prescribed exclusive remedies in the FLSA for violations of its mandates." 508 F.3d at 194.

Here, Plaintiffs allege in Count IV that "Defendants had a contractual and equitable obligation to compensate Plaintiffs and the class with legally required regular time and overtime wages for the regular and overtime hours Plaintiffs and the class worked for Defendants." Second Am. Compl. ¶ 175. While Plaintiffs' *quantum meruit* claim makes no explicit reference to the FLSA, the claim seeks the value of the regular time and overtime wages. Thus, despite Plaintiffs' characterization of Count IV, they must rely upon the FLSA as the source of their claim because the FLSA establishes minimum wage and overtime requirements. *Anderson*, 508 F.3d at 192. If Plaintiffs could evade the FLSA's "unusually elaborate enforcement scheme," *id.*, simply by suing the Defendants based on the theory of *quantum meruit*, then the FLSA's enforcement mandates would be "superfluous." *Id.* at 194. *See Farmer, et al. v. Directstat USA, LLC, et al.*, 2010 U.S. Dist. LEXIS 105738, at *47 (N.D. Ill 2010) ("the FLSA preempts Plaintiffs' state common law claims of unjust enrichment, quantum meruit, and breach of implied contract"); *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057, 1076 (N.D. Cal. 2009) (the FLSA "preempts common law claims that seek remedies for rights protected by the FLSA (such as minimum wage and overtime pay"). Accordingly, the FLSA preempts Plaintiff's *quantum meruit* claims, therefore Count IV must be dismissed.

### III. No Individual Liability Exists under the Maryland Workplace Fraud Act or the Maryland Wage Payment and Collection Law (Counts I and III)

Plaintiffs sue various Individual Defendants under the Maryland Workplace Fraud Act in Count I, and under the Maryland Wage Payment and Collection Law in Count III. These defendants—Kurt Antonio Boyd, Margaret Sherman Boyd, David Trent and Clifford B. Smith—assert that Plaintiffs cannot bring such claims against individuals working for a corporate entity.

The Maryland Wage Payment and Collection Law defines an "employer" as "any person who employs an individual in the state." Md. Code, Labor & Employment, § 3-501(b). In *Watkins v. Brown*, 173 F. Supp. 2d 409 (D. Md. 2001), this Court analyzed that definition, holding that individual "supervisors" or "managers" would not fall within the definition of "employers." Specifically, this Court held that "the plain language, general purpose and clear intent of the MWPCL do not support an interpretation of the word 'employer' that would include a mere supervisor of another employee." *Id*. at 415-16. In explaining its holding, this Court noted that the definition of "employer" for purposes of the Wage Payment and Collection Law was not as broad as the definition of "employer" for purposes of the Fair Labor Standards Act or the Maryland Wage and Hour Law, both of which included within the definition of "employer" a "person who acts directly or indirectly in the interest of another employer with an employee." §§ 3-301(b)(2), 3-401(c). This Court ultimately concluded that the individual defendant named in *Watkins*, a general manager who set plaintiff's salary and had final hiring and firing approval, was not an "employer" within the meaning of the Wage Payment and Collection Law. Since the Workplace Fraud Act uses the an almost identical definition of "employer" as the Wage Payment and Collection Law, this Court's interpretation of the term is the same under both statutes.

The Individual Defendants generally argue that Plaintiffs have not sufficiently alleged that they engaged in any specific conduct showing them to be an "employer" under the Maryland Wage Payment and Collection Law or Workplace Fraud Act. Plaintiffs' allegations as to the Individual Defendants are spare, and the entirety of their allegations against the Individual Defendants are essentially as follows: Plaintiffs allege that Kurt Antonio Boyd is president of Servicemax, that Margaret Sherman Boyd is secretary of Servicemax, that Trent is an owner and officer of FAS, and that Smith is president of Chesapeake. Second Am. Compl. ¶¶ 22, 24, 29,

34. Plaintiffs also generally contend that the Individual Defendants were "engaged in construction services" and that they "all work or worked directly or indirectly in the interests of CCI by, *inter alia*, engaging Plaintiffs and similarly situated employees to perform construction services on the Construction Projects." *Id*. ¶ 38. Finally, Plaintiffs assert that when their paychecks were rejected, they often directed their requests for payment to Smith. *Id*. ¶ 76.

The allegations against the Individual Defendants do not allege "enough facts to state a claim to relief that is plausible on its face" that they are employers within the definition of the Maryland Wage Payment and Collection Law and the Wage Fraud Act. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Other than naming the various titles of the Individual Defendants, Plaintiffs' Complaint contains virtually nothing more than mere labels and conclusions, which "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Thus, Plaintiffs have not sufficiently stated a claim for relief under the Maryland Wage Payment and Collection Law or Wage Fraud Act against the Individual Defendants. Accordingly, Counts I and III must be dismissed as to Kurt Antonio Boyd, Margaret Sherman Boyd, Trent and Smith.

## CONCLUSION

For the reasons stated above, Defendants' Partial Motions to Dismiss (ECF Nos. 26, 27, 29 and 30) are GRANTED. Accordingly, Counts I, II, III and IV are dismissed as to all Defendants as they pertain to work done on the National Naval Medical Center, and Counts I and III are dismissed in their entirety as to the Individual Defendants— Kurt Antonio Boyd, Margaret Sherman Boyd, David Trent and Clifford B. Smith. As a result, the following claims remain: 1) Plaintiffs' state law claims in Counts II and IV as they pertain to the work done on Johns Hopkins by all Defendants, 2) Plaintiffs' state law claims in Counts I (Maryland

Workplace Fraud Act) and III (Maryland Wage Payment and Collection Law) as they pertain to the work done on Johns Hopkins Hospital by the Corporate Defendants—Cleveland Construction, Inc., Servicemax, Inc., FAS Consultants, LLC, and Chesapeake Firestop Products, Inc., and 3) Plaintiffs' federal claims in Count V (Fair Labor Standards Act) as to all Defendants.

A separate Order follows.

Dated: July 21, 2011  /s/_____
Richard D. Bennett
United States District Judge