UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EUGENE V. BOUTONNER, JR., et al., | |
| PLAINTIFFS, | Case No. 1:11-cv-00244-RDB |
| v. | |
| CLEVELAND CONSTRUCTION, INC., et al., | |
| DEFENDANTS. | |

**DEFENDANT CLEVELAND CONSTRUCTION, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO ALLOW NOTICE TO SIMILARLY SITUATED EMPLOYEES AND TO APPROVE INTERROGATORY TO DEFENDANTS SEEKING THE IDENTIFY OF SIMILARLY SITUATED EMPLOYEES**

Joseph P. Harkins
Steven E. Kaplan
LITTLER MENDELSON, P.C.
1150 17th Street, NW
Suite 900
Washington, D.C.  20036
202.842.3400 Telephone
202.842.0011 Facsimile

*Counsel for Defendant Cleveland
Construction, Inc.*

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .................................................................................................. 1

II.   SUMMARY OF THE FACTS ............................................................................... 4

    A.    The Johns Hopkins Site ............................................................................. 4

    B.    The Walter Reed Site ................................................................................ 6

    C.    Plaintiffs' Employment .............................................................................. 6

        1.    Plaintiff Eugene Bouthner .............................................................. 6

        2.    Plaintiff Paul Isom ......................................................................... 7

        3.    Plaintiff Jose Mancia ...................................................................... 8

    D.    Summary of the Allegations in Plaintiffs' ................................................. 9

        1.    Misclassification ............................................................................. 9

        2.    Joint Employment ........................................................................... 9

        3.    Off-the-Clock Work ........................................................................ 9

    E.    Plaintiffs Request The Identity of Allegedly Similarly Situated "Persons" From November 18, 2007 Through The Present. .................................................. 10

III.  LEGAL FRAMEWORK FOR A COLLECTIVE ACTION UNDER THE FLSA ......... 11

    A.    Standard of Review ................................................................................... 11

IV.   ARGUMENT ...................................................................................................... 16

    A.    Plaintiffs Have Not Provided Sufficient Factual Evidence to Support Conditional Certification. ....................................................................................... 16

    B.    Even if the Court Finds That Plaintiffs Met Their Burden, This Case Is Not Suitable for A Collective Action. ................................................................... 19

        1.    Plaintiffs' "Joint Employer" Theory Cannot Be Properly Handled As A Collective Action. ............................................................................ 19

        2.    Plaintiffs' Allegations of Off-The-Clock Work Are Not Appropriate for Conditional Certification. ................................................. 26

    C.    Plaintiffs Have Not Met Their Burden That They Are Similarly Situated to the Proposed Class. ................................................................................ 29

    D.    Plaintiffs' Interrogatory, Notice and Consent Form Should Be Rejected, Plaintiffs' Request for Confidential Employee Information Should Be Denied, and Plaintiffs' Use of Potential Opt-In Contact Information Should Be Limited. ....................................................................................... 31

1.   The Notice Should Be Limited To Workers Who Were Allegedly Misclassified From October 1, 2009 through December 31, 2010.......... 31

2.   Plaintiffs' Request for Confidential Information Regarding Defendants' Employees Is Overbroad and Should Be Denied. ............... 32

3.   Plaintiffs' Use of Prospective Class Members' Contact Information Should Be Limited. ................................................................ 34

4.   Plaintiffs' Request for Posting Should Be Denied................................. 36

5.   Plaintiffs' Notice Is Overly Broad, Misleading, and Should Contain Additional Information................................................ 38

V.   CONCLUSION........................................................................................ 40

# TABLE OF AUTHORITIES

CASES

Aguilar v. Complete Landsculpture, Inc.,
   2004 U.S. Dist. LEXIS 20265 (N.D. Tex. 2004) ....................................................32

Bamgbose v. Delta-T Group, Inc.,
   684 F. Supp.2d 660 (E.D. Pa. 2010) ...........................................................21, 22

Camper v. Home Quality Mgmt. Inc.,
   200 F.R.D. 516 (D. Md. 2000) ....................................................................14

Castle v. Wells Fargo Financial, Inc.,
   No. C 06-4347, 2008 WL 495705, at *2 (N.D. Cal. 2008) ...........................26

Cook v. Yellow Freight Sys., Inc.,
   132 F.R.D. 548 (E.D. Cal. 1990) ...............................................................32, 33

Diaz v. Elect. Boutique of Am., Inc.,
   2005 WL 2654270 (W.D.N.Y. 2005) .............................................................28

England v. New Century Fin. Corp.,
   370 F. Supp. 2d 504 (M.D. La. 2005) ...........................................................26

Fasanelli v. Heartland Brewery, Inc.,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007) ...........................................................32

Gjurovich v. Emmanuel's Marketplace, Inc.,
   282 F. Supp. 2d 101 (S.D.N.Y. 2003) ...........................................................38

Gordon, et al. v. Kaleida Health, et al.,
   08-CV-378S, 2009 U.S. Dist. LEXIS 95729 (W.D.N.Y. 2009) ...................37

Heaps v. Safelight Solutions, LLC, et al.
   Civil Action No. 2:10-cv-729 2011 U.S. Dist. LEXIS 40089 (D.Ohio 2011) .........38

Hinojos v. The Home Depot, Inc., 2006 WL 3712944, at *1 (D. Nev. 2006) .........27, 28

Hintergerger v. Catholic Health Sys., et al.,
   Civil Action No. 8-CV-380S, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. 2009) .............32, 36

Hipp ,164 F.R.D. 576 ..............................................................................34

Hoffmann-La Roche, Inc. v. Sperling,
    493 U.S. 165 (1989).................................................................................15

Jackson v. Mayor of Baltimore,
    2009 U.S. Dist. LEXIS 59787 (D. Md. 2009) .......................................20

Jacobson v. Comcast Corp.,
    740 F. Supp.2d 683 (D. Md. 2010).........................................................20

Lewis v. The Huntington National Bank,
    Civil Action No. C2-11-cv-0058, 2011 U.S. Dist. LEXIS 65068 (D.Ohio 2011)..................36

Mancia v. Mayflower Textile Servs. Co.,
    Civil Action No. 08-cv-1092 (CCB), 2008 U.S. Dist. LEXIS 88170 (D. Md. 2008) ............11

Pac. Gas & Elec. Co. v. Pub. Util. Comm'n,
    475 U.S. 1 (1986)....................................................................................37

Padberg v. McGrath-McKechnie,
    2007 WL 2295402 (E.D.N.Y. 2007).......................................................33

Print Comm. Co., v. APCC Svcs., Inc., 554 U.S. 269 (2008). ...................13

Rawls v. Augustine Home Health Care, Inc.,
    244 F.R.D. 298 (D. Md. 2007).................................................................12

Schultz v. Capital Int'l Sec. Inc.,
    466 F.3d 298 (4th Cir. 2006) ...................................................................20

Shajan v. Barolo, Ltd., et al.,
    Civil Action No. 10-cv-1385, 2010 U.S. Dist. LEXIS 54581 (S.D.N.Y. 2010)......................36

Syrja v. Westat, Inc.
    756 F. Supp. 2d 689-690 (D.Md. 2010)........................................15, 19, 27

Tracy v. Dean Witter Reynolds, Inc.,
    185 F.R.D. 303 (D. Colo. 1998) .............................................................32

Wal-Mart Stores, Inc. v. Dukes,
    --- S. Ct. ----, 2011 WL 2437013 (2011) ............................11, 12, 13, 17

West v. Border Foods, Inc.,
    2006 WL 1892527 (D. Minn. 2006) .......................................................28

Williams v. EZ Storage Corp.,
    Civil Action No. 10-cv-3335 (RDB), 2011 U.S. Dist. LEXIS 43267 (D.Md. 2011) ...... passim

Williams v. Long,
    585 F. Supp. 2d 679 (D.Md. 2008) .........................................................11

Wooley v. Maynard,
    430 U.S. 705 (1977)............................................................................................37

Wren v. RGIS Inventory Specialists,
    Case No. C-06-05778 JCS, 2007 U.S. Dist. LEXIS 95439 (N.D. Cal. 2007).......................32

Zheng v. Liberty Apparel Co.,
    355 F.3d 61 (2nd Cir. 2003)..............................................................................20

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. § 206, *et seq.* (the "FLSA") ...................................1

FLSA.................................................................................................3, 4, 11, 14

**OTHER AUTHORITIES**

29 C.F.R. §825.106(b) ...........................................................................................21

Article I, Section 8, clause 17 of the U.S. Constitution ................................................1

Defendant Cleveland Construction, Inc. ("CCI"), by and through its undersigned counsel, submits this Opposition to Plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees ("Motion for Conditional Certification").

## I.  __INTRODUCTION__

On February 28, 2011, CCI filed a Motion to Partially Dismiss Plaintiffs' Second Amended Complaint.  Specifically, CCI moved the Court to dismiss:  (1) all state statutory and common law claims that arise from work performed at the National Naval Medical Center located in Bethesda, Maryland because those claims are barred by Article I, Section 8, clause 17 of the U.S. Constitution, as developed in the federal enclave doctrine; and (2) Plaintiffs' *quantum meruit* claim because it is preempted by the federal Fair Labor Standards Act, 29 U.S.C. § 206, *et seq.* (the "FLSA").  On July 21, 2011, the District Court granted CCI's Motion and dismissed all state law allegations and claims related to that work site, leaving only FLSA claims at that site.

On June 30, 2011, Plaintiffs had filed a Motion for Conditional Certification in accordance with §216(b) of the FLSA.  See Motion for Conditional Certification, at p. 1 fn. 1. The parties had jointly proposed in their Joint Case Management Proposal that Defendants file their Opposition within 30 days and Plaintiffs file their Replies 15 days thereafter.  The Court approved the Proposal on June 15, 2011.

Among the Second Amended Complaint ("Complaint") and the various declarations that accompany the Motion for Conditional Certification, Plaintiffs present the Court with a grab bag of legal theories and questionable facts that do not add up to a proper FLSA collective action of similarly situated employees.   When analyzed, these documents fail to identify a single, overarching policy or plan that ties together all of the corporate defendants and all of the

carpenters and laborers at two different work sites subject to two different sets of laws. Plaintiffs attempt to support a proper FLSA collective action with two threshold issues – independent contractor versus employee status among the workers and joint employment status among the employers – but these are not FLSA claims in themselves. Rather, resolution of these threshold issues supposedly leads to a claim of off-the-clock work and overtime pay which is left disconnected from the threshold issues and factually unsupported, in any event.

In their Motion for Conditional Certification, Plaintiffs have not provided the Court with any facts to support the gravamen of their FLSA claim – their allegations of off-the-clock work. Rather, Plaintiffs argue that the Court should grant their Motion for Conditional Certification because Defendants "systematically misclassified" them as independent contractors to avoid paying overtime.  As explained herein, this argument does not form the basis for an FLSA collective action.  Plaintiffs clearly hope that the Court overlooks the fact that they have not supported their allegations that they actually worked off-the-clock.

In this regard, one of the hurdles that Plaintiffs cannot overcome is that any damages that flow from the alleged misclassification have nothing to do with off-the-clock work or overtime pay.  For example, Plaintiffs do not allege that either Defendants CCI or FAS Consultants, LLC ("FAS") misclassified them as independent contractors; yet, Plaintiffs attempt to represent CCI's and FAS's employees, too.[1]  See Plaintiffs' Court Approved Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees [Dkt. No. 52].

Similarly, Plaintiff Mancia concedes that "Defendants" reclassified him from independent contractor to employee, i.e., correctly classified him, after only a few weeks; yet,

---

[1] Although not alleged in the Complaint, Plaintiff Mancia claims that FAS incorrectly misclassified him as an independent contractor for a brief period of time.  Declaration of Mancia, ¶ 4.  However, the December 31, 2009 paystub that he attached to his declaration is from Defendant Chesapeake, not FAS.

Plaintiffs attempt to represent allegedly similarly situated employees based on misclassification after that period of time.  Declaration of Plaintiff Mancia, ¶ 4.  Moreover, Plaintiffs concede, as they must, that they were in fact paid overtime pay when they remained working beyond their regular work shift.  Second Am. Compl. ¶ 61.  These undisputed facts – which come from the Complaint and their own declarations – contradict their assertion that they were not paid for certain work because they were classified as independent contractors for a brief period of time.

In the final analysis, the Court should deny Plaintiffs' Motion for Conditional Certification for several reasons.  First, Plaintiffs' declarations do not contain any statements concerning off-the-clock work.  Rather, Plaintiffs focus on a brief period of time in which they were allegedly misclassified as independent contractors.  As such, Plaintiffs have not met their burden of producing some factual basis from which the Court can determine that similarly situated employees exist and form a coherent whole.

Second, this action is not suitable for conditional certification because of the individualized factual and legal issues presented by Plaintiffs' "joint employer" theory.  This is not an ordinary case in which there is one ostensible employer, one alleged joint employer, and one work site.  Rather, here, the analysis must encompass, among other factors, CCI's relationship with each of the three subcontractors (at two sites), Plaintiffs' employment with each subcontractor, and CCI's alleged control of Plaintiffs' work.  This broad analysis eliminates the economy of scale envisioned by the FLSA collective action procedure.

Third, when, as here, each prospective class member's off-the-clock claim stands on individualized facts and requires a series of discrete inquires about, for example, what exact tasks they were asked to perform before and/or after their shift, who asked them to perform the task, how long the task(s) took, how often they were asked to perform the task(s), and whether they

- 3 -

arrived to work early to socialize or actually worked, conditional certification is improper and should be denied.

CCI respectfully requests that this Court deny Plaintiffs' Motion for Conditional Certification. If the Court determines that conditional certification is appropriate, however, Plaintiffs' proposed Notice and Consent Form should be rejected, their request for confidential employee information should be denied, and their use of potential opt-in contact information should be limited.

## II.   SUMMARY OF THE FACTS

CCI was the general contractor for "inside work" at the two work sites at issue: (1) the New Clinical Building at the Johns Hopkins Hospital in Baltimore, Maryland ("Johns Hopkins site"); and/or (2) the National Naval Medical Center building of the soon-to-be-renamed Walter Reed National Military Medical Center on Wisconsin Avenue in Bethesda, Maryland ("Walter Reed site").   Second Am. Compl. ¶¶ 38-39.   Plaintiffs performed dry wall installation, demolition, metal and/or other carpentry work at one of the two work sites (or both). Id.

There are no allegations that Cleveland Construction, Inc. or FAS Consultants, LLC misclassified any employee as an independent contractor.

### A.   The Johns Hopkins Site

On May 15, 2008, CCI entered into a comprehensive subcontractor agreement with Servicemax, Inc. to perform some drywall and related work at Johns Hopkins Hospital. (Exhibit 1, Servicemax Subcontractor Agreement, dated May 15, 2008); see also Declaration of Roy Atherton, Vice President of Cleveland Construction, ¶ 1, at Exhibit 2).   The subcontractor agreement provides, among several other provisions, that the subcontractor:

- agrees to fully comply with all applicable Federal, State and/or Municipal rules, regulations, orders, standards, notices, and requirements relating to discrimination in

employment, fair employment practices, employment of special disabled veterans, etc.  Id. at p. 2.  (Provision 5(b)(1), titled Permits, Licenses, and Compliance with Law)

•  shall timely file all required tax returns with, and pay when due, all taxes owing to each governmental body applicable to the Work hereunder and to the wages of its employees for services in connection herewith (include, without limitation, sale, use, gross receipts and excise taxes and unemployment and FICA taxes).  Id. at p. 4 (Provision 6, titled Taxes).

•  is aware of and is familiar with the requirements for Workers Compensation Insurance Coverage and is responsible for determining and obtaining the type of coverage to be purchased.  Id. at p. 4 (provision 7, titled Workers' Compensation).  In addition, this provision states that the subcontractor will "fully comply with the workers compensation laws, rules and regulations of each state in which work is to be performed . . . "  Id.

As provided, CCI clearly expected that its subcontractors would comply with all applicable federal, state, and local law, including proper classification of the workers.

In or about October 2009, the scope of the work under the CCI-Servicemax contract significantly expanded.  In particular, on October 1, 2009, Servicemax agreed to provide the labor for all remaining framing on the project, including framing repairs, backing, exterior framing, stocking of material, layout, and clean-up.  Declaration of Roy Atherton, ¶ 4.  As such, Servicemax went from approximately 10 to 15 employees to over 100 employees within a short period of time.  Id. at ¶ 3; Second Am. Compl. at ¶86. Prior to October, CCI was performing the framing work with its employees.  Declaration of Roy Atherton, at ¶ 5.  However, once CCI subcontracted the framing work to Servicemax, CCI terminated the employees that were performing this work, and Servicemax hired many of them.[2] Id. at  ¶ 5; Second Am. Compl. at ¶ 86.

FAS did not perform any work at the Johns Hopkins site.

---

[2] Servicemax contends that it then subcontracted the work to Defendant Chesapeake Firestop Products, Inc. ("Chesapeake").  There seems to be a disputed issue as to when Servicemax subcontracted the work. For purposes of Plaintiffs' Motion for Conditional Certification, the timing of the subcontracting from Servicemax to Chesapeake should not affect the Court's decision.

**B.      The Walter Reed Site**

In March 2009, CCI subcontracted some work to subcontractor Defendant FAS. (Exhibit 3, FAS Subcontractor Agreement, dated March 34, 2009).   The contract ended in December 2009/January 2010.  Plaintiffs have not made any allegations that FAS misclassified employees as independent contractors.

From that point forward, CCI subcontracted the same work to Defendant Chesapeake. None of the Plaintiffs allege that they worked for Chesapeake at Walter Reed.  Also, Servicemax did not perform any work at the Walter Reed site.

**C.      Plaintiffs' Employment**

**1.      Plaintiff Eugene Bouthner**

Plaintiff Eugene Bouthner worked for CCI from July 19, 2009 through October 3, 2009, approximately two and one half months.  Second Am. Compl. ¶¶ 79, 86; Declaration of Plaintiff Bouthner, ¶¶ 1 -2.  Plaintiff was asked to complete various forms, including a W-4 tax form. Second Am. Compl. ¶ 80.   Plaintiff was classified as a non-exempt employee and received overtime pay when he worked over 40 hours in a work week. Second Am. Compl. ¶ 61; see also Exhibit 1 to Declaration of Plaintiff Bouthner, p. 2 (Pay Period 9/27/09 – 10/3/09).  He also alleges that he was hired at a rate of $17.85 per hour, but that CCI only compensated him at a rate of $15.00.  Declaration of Plaintiff Bouthner, ¶ 2.

Upon his hire, Plaintiff Bouthner acknowledged that he received a copy of CCI's Employee Manual. (Exhibit 4, Plaintiff Bouthner's Employee Acknowledgment Form).

In October 2009, CCI terminated Plaintiff Bouthner because the work he was performing was subcontracted to Servicemax.  Second Am. Compl. ¶ 86. Plaintiff Bouthner then worked for Servicemax until December 2009. Declaration of Plaintiff Bouthner, ¶ 1. Plaintiff Bouthner

- 6 -

alleges that Servicemax classified him and similarly situated employees as independent contractors.   Second Am. Compl. ¶ 86.   He also declares that he worked for Defendant Chesapeake for one or two pay periods.   Declaration of Bouthner, ¶ 7.   He is the only Plaintiff that alleges or declares that he worked for Chesapeake.

### 2.    Plaintiff Paul Isom

Plaintiff Paul Isom also alleges that he worked for CCI, although he does not state for how long.[3]   Second Am. Compl. ¶¶ 100-102.   Unlike Plaintiff Bouthner, Plaintiff Isom has not provided any documentation that he ever worked for CCI, and CCI disputes that he was an employee of the Company.

It appears that he worked at the Johns Hopkins site for approximately two months and then the Walter Reed site for approximately one month.   Second Am. Compl. ¶ 99; Declaration of Plaintiff Isom, ¶ 1.   In this regard, Plaintiff Isom alleges that, in or about November 2009, a CCI foreman who he believes was named Matt interviewed and hired him.[4] Second Am. Compl. ¶¶ 99-100.   He also alleges that a CCI foreman escorted him to the basement where he worked under CCI's supervision.   Shortly thereafter, he was transferred to another floor and a Servicemax foreman became his supervisor.   Second Am. Compl. ¶ 103.

Upon his hire, Plaintiff Isom alleges he was told that he would be paid at a rate of $17.00 per hour, but was only paid $15.00 per hour.   Second Am. Compl. ¶ 105; Declaration of Plaintiff Isom, ¶ 4.   Unlike his co-Plaintiffs, he alleges that a "CCI Supervisor" named Juan allegedly told

---

[3] Contrary to Plaintiffs' allegations, Plaintiff Bouthner is the only named Plaintiff that worked directly for CCI.
[4] CCI did not have a foreman named "Matt" working at the Johns Hopkins site.   Declaration of Craig Lenell, Assistant Project Manager at Johns Hopkins, at ¶ 3 at Exhibit 4).   However, upon information and belief, Matt Buchanan was a Servicemax foreman.   Id. at ¶ 3.   CCI assumes that Plaintiff Isom is referring to Mr. Buchanan.

him that he would also earn a piece-rate of $4.00 per sheet.[5]    Second Am. Compl. ¶¶ 104-106; Declaration of Plaintiff Isom, ¶ 3.

In approximately mid-December 2009, Plaintiff Isom transferred to the Walter Reed site. Second Am. Compl. ¶ 104.  He stopped working in January 2010. Second Am. Compl. ¶ 99. Plaintiff Isom also alleges that a subcontractor classified him and similarly situated employees as independent contractors. Second Am. Compl. ¶ 86.

### 3.    Plaintiff Jose Mancia

Plaintiff Jose Mancia's declaration, like that of his co-Plaintiffs, is somewhat confusing. For example, he declares that "[in] mid-December [he] applied to work with CCI at the Walter Reed hospital project and CCI and FAS hired me at that time.  I subsequently worked for CCI and FAS for several months." Declaration of Plaintiff Mancia, ¶ 1.  Like Plaintiff Isom, Plaintiff Mancia has not provided any documentation that he worked for CCI.

In particular, Plaintiff Mancia alleges that he worked at the Walter Reed site from December 2009 through approximately March 2010, also a brief period of time.  Second Am. Compl. ¶ 115.  In this connection, Plaintiff Mancia alleges that, in mid-December 2009, he applied for work at CCI's trailer and spoke to a foreman he believes was named Luis.[6]  Id. at ¶ 116.  "CCI" hired him the same day.  Id. at ¶ 117. Shortly thereafter, Plaintiff alleges that he was transferred from FAS to Defendant CCI.  Id. at ¶ 124; Declaration of Plaintiff Mancia, ¶ 5.

---

[5] CCI did not have a foreman named Juan working at the Johns Hopkins site. However, upon information and belief, Servicemax had a Supervisor named Juan Contraras.  Declaration of Craig Lenell, at ¶ 4.   CCI assumes that Plaintiff Isom is referring to Mr. Contraras.
[6] CCI did not have a foreman named Luis working at the Walter Reed site.  Declaration of Don Hufstedler, Cleveland Construction Project Manager at Walter Reed,  ¶ 3, at Exhibit 5).  However, upon information and belief, one of the subcontractors had a Supervisor named Luis Orellano and Luis Cerna. Id. at ¶ 3,  CCI assumes that Plaintiff Mancia is referring to Mr. Orellano.

Plaintiff Mancia also alleges that at least one subcontractor classified him and similarly situated employees as independent contractors. Second Am. Compl. ¶¶ 123-124. Notably, Plaintiff Mancia <u>admits</u> that he was reclassified from an independent contractor to an employee after a few weeks. <u>See</u> Declaration of Plaintiff Mancia, ¶ 4 (Defendants "did not withhold taxes from my paychecks or make required contributions on my behalf during the first <u>several</u> weeks of my employment. Instead, I was <u>initially</u> paid as an independent contractor") (emphasis added).

### D.   Summary of the Allegations in Plaintiffs' Complaint

#### 1.   Misclassification

None of the Plaintiffs allege that CCI or FAS misclassified them. Plaintiff Bouthner alleges that he was classified as an independent contractor from October 2009 through December 2009 (3 months), Plaintiff Isom from November 2009 through January 2010 (3 months), and Plaintiff Mancia from mid-December 2009 through January 2010 (1½ months). Second Am. Compl. ¶¶ 86, 110, 123. Plaintiff Mancia admits that was reclassified from an independent contractor to an employee in mid-January 2010. <u>See</u> Declaration of Plaintiff Mancia, ¶ 4.

#### 2.   Joint Employment

Plaintiffs allege that CCI is a joint employer with Servicemax (at the Johns Hopkins site), with FAS (at the Walter Reed site), and with Chesapeake (at both sites). <u>See, e.g.</u> Second Am. Compl. ¶¶ 40-46, 62. Plaintiffs rely on a multiplicity of allegations and circumstances to make this threshold "fact."

#### 3.   Off-the-Clock Work

In their Complaint, Plaintiffs allege the following, with respect to off-the-clock work: (1) "Defendants" required Plaintiffs and other similarly situated employees to be ready to begin

work with their tools and materials by 7:00 a.m.; (2) "Defendants" required Plaintiffs and other similarly situated employees to be present at the worksite and engage in certain activities for "Defendants'" benefit prior to the start of their paid shifts; (3) at the Johns Hopkins site, "Defendants" required employees to collect necessary tools and materials from a work room, transport such tools and materials to the work area, and set up the area before the shift began; (4) at the Walter Reed site, "Defendants" instructed Plaintiffs to report to the large tool receptacle at their work area by 6:45 a.m. in order to ensure that the employees and tools were ready to begin their assigned tasks at 7:00 a.m.; (5) "Defendants" required Plaintiffs and similarly situated employees to collect the tools and materials and return them at the end of the shift, and in no event earlier than 3:25 p.m.  This breakdown process routinely lasted past the end of the paid shift; (6) "Defendants" required Plaintiffs and similarly situated employees to report on the premises before the start of their paid shifts in order to clock or sign in sufficiently early to complete the required set up before the scheduled shift; and (7) "Defendants" required Plaintiffs and similarly situated employees to attend mandatory meetings during their unpaid lunch breaks or before or after their paid work hours.  Second Am. Compl. ¶¶ 49-60.

Plaintiffs' declarations are completely devoid of any facts to specify which Defendant did what and to otherwise support these off-the-clock claims.

### E.  Plaintiffs Request The Identity of Allegedly Similarly Situated "Persons" From November 18, 2007 Through The Present.

Plaintiffs request that the Court order each defendant to:

> Identify every current and former person employed by the Defendant Cleveland Construction, Inc., Servicemax, Inc., Kurt Antonio Boyd, Margaret Sherman Boyd, FAS Consultants, LLC, David R. Trent, Genie Trent, Chesapeake Firestop Products, Inc., and/or Clifford B. Smith at the Johns Hopkins Construction Project and/or the Walter Reed Construction Project Between November 18, 2007, and  the present date.

See Plaintiffs' Court Approved Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees [Dkt. No. 52]. Of course, if Plaintiffs have not established a proper FLSA collective action, such disclosure is inappropriate.

As explained herein, the Court should deny Plaintiffs' Motion for Conditional Certification in its entirety.

## III.    LEGAL FRAMEWORK FOR A COLLECTIVE ACTION UNDER THE FLSA

### A.    Standard of Review

Defendant CCI respectfully suggests that, in light of the U.S. Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, --- S. Ct. ----, 2011 WL 2437013, *9-10 (June 20, 2011) (citation omitted), this Court should modify its traditional two-step analysis for deciding Plaintiffs' Motion for Conditional Certification. Although CCI readily acknowledges that Dukes was decided under Rule 23, the principles announced by the Supreme Court pertain generally to aggregate claims, such as those under §216(b) of the FLSA. Indeed, the same reasons the Supreme Court reversed the class certification decision in Dukes apply with equal force in this case.

Traditionally, this Court, as well as many others, decided whether to "conditionally certify" a collective action by means of a two-step inquiry.[7]

---

[7] This Court is familiar with conditional certification and court-approved notice, pre-Dukes.  See Williams v. EZ Storage Corp., Civil Action No. 10-cv-3335 (RDB), 2011 U.S. Dist. LEXIS 43267 (D. Md. Apr. 21 2011). To make this showing, Plaintiffs allegations "must consist of more than 'vague allegations' with 'meager factual support,' but it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." Mancia v. Mayflower Textile Servs. Co., Civil Action No. 08-cv-1092 (CCB), 2008 U.S. Dist. LEXIS 88170 (D. Md. 2008) (quoting D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 893 (D. Md. 1995). Plaintiffs must demonstrate that they were victims of a common policy, scheme, or plan that violated the law. EZ Storage Corp, 2011 U.S. Dist. LEXIS at *6. Plaintiffs may rely on "affidavits or other means." Williams v. Long, 585 F. Supp. 2d 679, 683 (D.Md. 2008).

> First, upon a minimal evidentiary showing that a plaintiff can meet
> the substantive requirements of 29 U.S.C. § 216(b), the plaintiff
> may proceed with a collective action on a provisional basis.
> Second, following discovery, the court engages in a more stringent
> inquiry to determine whether the plaintiff class is "similarly
> situated" in accordance with the requirements of § 216, and renders
> a final decision regarding the propriety of proceeding as a
> collective action.

Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007) (internal

citations omitted).   Dukes makes clear that whether employees are "similarly situated" is a

necessary requirement, but does not suffice to ensure that the overarching goals of efficiency and

due process are served either under Rule 23 or any other procedural rule, if claims are

aggregated.

Dukes makes clear that whether a group of plaintiffs is a victim of "a common policy,

scheme, or plan that violated the law" no longer is the talisman by which class certification is

decided.  In Dukes, the Court considered a situation analogous to Plaintiffs' contentions in this

case:

> The majority concluded that respondents' evidence of
> commonality was sufficient to "raise the common question
> whether Wal-Mart's female employees nationwide were subjected
> to a single set of corporate policies (not merely a number of
> independent discriminatory acts) that may have worked to
> unlawfully discriminate against them in violation of Title VII."

Dukes at p.6.  The Court recognized, however, that this contention, even if true, is insufficient to

establish the hoped-for efficiencies of aggregate litigation.  Id. at p. 9 ( "Quite obviously, the

mere claim by employees of the same company that they have suffered a Title VII injury, or even

a disparate-impact Title VII injury, gives no cause to believe that all their claims can

productively be litigated at once").  Instead, the correct test is whether the "common contention,

... , [is] of such a nature that it is capable of classwide resolution—which means that

- 12 -

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

That inquiry is not unique to Rule 23, nor is it inconsistent with the "similarly situated" language of §216(b).  Indeed, the Court previously recognized that all aggregate litigation must be brought on behalf of those who are similarly situated, but that merely begins the inquiry.

> [C]lass actions constitute but one of several methods for bringing about aggregation of claims, i.e., they are but one of several methods by which multiple similarly situated parties get similar claims resolved at one time and in one federal forum.  See Rule 20(a) (permitting joinder of multiple plaintiffs); Rule 42 (permitting consolidation of related cases filed in the same district court); 28 U.S.C. § 1407 (authorizing consolidation of pretrial proceedings for related cases filed in multiple federal districts); § 1404 (making it possible for related cases pending in different federal courts to be transferred and consolidated in one district court); D. Herr, Annotated Manual for Complex Litigation § 20.12, p 279 (4th ed. 2007) (noting that "[r]elated cases pending in different federal courts may be consolidated in a single district" by transfer under 28 U.S.C. § 1404(a)).

Print Comm. Co., v. APCC Svcs., Inc., , 554 U.S. 269, 298 (2008).

Thus, while the claims of "similarly situated" parties may be aggregated, whether they should be aggregated in a particular case, consistent with the goals of judicial efficiency and due process, requires courts to look beyond this threshold determination.

Although there may be instances in which the Dukes inquiry is heavily dependent on the facts, and a court must await the results of discovery to be confident of its decision, that assuredly should not be the rule in each case under §216(b), nor is it  the case here.  A bedrock principle of Dukes is that the expedient of Trial by Formula, particularly the use of samples to extrapolate findings to absent plaintiffs, is inconsistent with an employer's right to raise its individualized defenses to each claimant, including the amount of backpay, if any.  Dukes at p.

27 ("a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims").

Notably – even before <u>Dukes</u> – this Court has recognized that the inquiry does not begin and end with the question of whether a plaintiff has made a preliminary factual showing that a similarly situated group of potential plaintiffs exists.  Indeed, this Court has repeatedly held that class manageability is also a critical inquiry at the conditional certification stage in FLSA cases, and that approach is even more compelling after <u>Dukes</u>.

For example, in <u>D'Anna</u>, this Court squarely ruled:

> This Court concludes that the better reasoned cases require the Plaintiff to make a preliminary factual showing that a similarly situated group of potential plaintiffs exist. The rationale of the <u>Severtson</u> Court is persuasive: <u>"As a matter of sound case management, a court should, before offering [to assist Plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists</u> …. The courts, as well as practicing attorneys, have a responsibility to avoid the stirring up' of litigation through unwarranted solicitation."  Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense. Id. at 893-94 (emphasis added) (quoting <u>Severtson v. Philips Beverage Co.</u>, 137 F.R.D. 264, 266-67 (D. Minn. 1991)).

903 F. Supp. at 889.

The above-quoted language that the Court should make "a preliminary inquiry as to whether a manageable class exists" at the conditional certification stage also was cited in <u>Quinteros v. Sparkle Cleaning, Inc.</u>, 532 F. Supp. 2d 762, 771-72 (D. Md. 2008) and <u>Camper v. Home Quality Mgmt. Inc.</u>, 200 F.R.D. 516, 520 (D. Md. 2000); <u>see also</u> <u>EZ Storage</u>, 2011 U.S. Dist. LEXIS at *6 ("district courts have broad discretion to determine whether a collective action is an appropriate means for prosecuting a FLSA cause of action.").  Indeed, the Supreme Court

in <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165 (1989), stressed the importance of making the manageability assessment early in the certification process:

> One of the most significant insights that skilled trial judges have gained in recent years is the wisdom and necessity for early judicial intervention in the management of litigation. A trial court can better manage a major ADEA[8] action <u>if it ascertains the contours of the action at the outset.</u>

<u>Id</u>. at 171, 487 (citations omitted) (emphasis added).

Significantly, Judge Messitte recently analyzed the appropriateness for a court to consider "the question of manageability at the notice stage" or whether "any concerns regarding manageability should be deferred until the second stage of the certification." <u>Syrja v. Westat, Inc.</u> 756 F. Supp. 2d 689-690,  (D. Md. 2010).  After a review of the case law, Judge Messitte held that manageability of a proposed class at the notification stage is perfectly appropriate.  <u>Id</u>. at 690.   He then denied plaintiff's motion for conditional certification because plaintiff's allegations of off-the-clock work would require individualized factual inquires.  <u>Id</u>.

Here, it already is apparent that whether each potential opt-in plaintiff is or was a <u>de facto</u> employee of CCI and, if so, how much backpay, if any, is owed, must be determined uniquely for each employee.  A jury will be entitled to know the particulars of each class member's employment, in terms of the site where it occurred, the nature of the supervision provided, the degree of supervisory discretion exercised, and the amount of time he or she alleges to have been uncompensated, as well as the evidence that impeaches these claims.  No discovery will change these evidentiary burdens, and it would be a waste of time and money to defer deciding that this case cannot proceed collectively when that question has an obvious answer today.

---

[8] As an amendment to the FLSA, the Age Discrimination in Employment Act is also governed by the collective action procedure.

## IV.   ARGUMENT

### A.   Plaintiffs Have Not Provided Sufficient <u>Factual</u> Evidence to Support Conditional Certification.

Plaintiffs do not offer any factual support for their several off-the-clock allegations.  In opposing conditional class certification, employers generally argue, among other things, that a court should not rely on declarations that simply reiterate allegations contained in the complaint, contain bald and conclusory statements, or contain hearsay or other inadmissible evidence.  Here, by contrast, Plaintiffs' declarations do not contain <u>any</u> statements concerning their off-the-clock allegations contained in the Complaint, and nor do they contain any statements concerning how the two sites at issue have similar employment settings.

Neither Plaintiff Isom nor Plaintiff Mancia state that they worked off-the-clock in their declarations.  Plaintiff Bouthner baldly declares, in one phrase, that he was required to perform pre-shift work (Declaration of Plaintiff Bouthner, ¶ 5), but he does not provide the Court with any facts to support this statement, <u>e.g.</u>, who instructed him to perform the task(s), when the instruction was made, which Defendant made the request, how the instruction was relayed, the task(s) he was required to perform, how often he actually performed the task(s), how long each task took to perform, when any uncompensated meetings took place[9] or how often.

<u>Williams v. EZ Storage Corp.</u> is instructive with respect to the evidentiary support plaintiff provided the Court in support of his motion for conditional certification, compared with the instant case. First, plaintiff Williams, who worked for EZ Storage in excess of one year,

---

[9] The <u>only</u> example that any of the Plaintiffs provide of an uncompensated meeting is in the Bouthner declaration when he declares that he was not paid for a meeting "where employees were told they were being transferred to another employer."  Declaration of Plaintiff Bouthner, ¶ 5.  If the meeting took place as Plaintiff Bouthner described, that meeting was on his <u>last</u> day of employment with CCI.  It is difficult to imagine how that statement supports Plaintiffs' theory that there was a common scheme to violate the FLSA, as alleged in paragraph 59 of the Complaint.

declared: (1) that the Vice President of EZ Storage instructed him to perform pre-shift work; (2) that the District Manger instructed him to perform end-of-month procedures; (3) what the work entailed; (4) how long it generally took; and (5) that he spoke with similarly situated employees and they had similar complaints about working off-the-clock pre-shift and end-of-the-month. (Exhibit 6, Declaration of plaintiff Williams). Significantly, even with that level of specificity, the Court would <u>not</u> have granted conditional certification based on the declaration alone. The Court was ultimately persuaded because plaintiff provided the following additional evidence:

> As corroboration, Plaintiffs point to the stipulation made by Defendant that all Resident and Relief Managers are uniformly subject to the same policies, rules, pay systems, hours, and benefits. In addition, Plaintiffs have provided relevant sections of the ezStorage operations manual which describes the pre-shift and end of month procedures demanded of Resident and Relief Managers.

<u>EZ Storage</u>, 2011 U.S. Dist. LEXIS at *8.[10] Here, there is no such evidence.

Rather than provide any factual support for their off-the-clock allegations (at either site and for any of the subcontractors), Plaintiffs assert that it is enough that they were misclassified as independent contractors for a brief period of time. Indeed, Plaintiffs' argument for conditional class certification is summarized as follows:

> This failure to pay occurred <u>because</u> Plaintiffs and the other workers were systematically misclassified as 'contract labor,' because Defendants routinely failed to compensate for attendance at mandatory meetings, and/or for preliminary and postliminary duties that were integral and indispensable to the workers' primary duties or both.

---

[10] <u>EZ Storage</u> is also distinguishable from the instant case because there were no joint employer issues, and EZ Storage did not advance an argument that plaintiff's off-the-clock claims were not suitable for conditional certification. Furthermore, the Court granted conditional certification before the Supreme Court issued the <u>Dukes</u> decision.

Motion for Conditional Certification, at p. 8 (emphasis added).  As such, it is clear from this argument that Plaintiffs intend to rely completely on the allegations made in the Complaint with respect to the crux of their overtime claims.  This is not proper.

Significantly, and contrary to Plaintiffs' argument, any damages which flow from the alleged misclassification have nothing to do with off-the-clock work or overtime pay.  First, Plaintiffs do <u>not</u> allege that either CCI or FAS misclassified them as independent contractors, but Plaintiffs are attempting to represent CCI's and FAS's employees, too.  <u>See</u> Plaintiffs' Court Approved Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees [Dkt. No. 52].

Second, Plaintiff Mancia admits that he was only misclassified for a few weeks, but Plaintiffs are attempting to represent allegedly similarly situated employees based on alleged misclassification <u>after</u> that period of time.  Declaration of Plaintiff Mancia, ¶ 4.

Third, Plaintiffs concede, as they must, that they were in fact paid overtime pay when they remained working beyond their regular work shift.  Second Am. Compl. ¶ 61.  These undisputed facts – which come from the Complaint and their own declarations – contradict Plaintiffs' allegations that they were not compensated for off-the-clock work <u>because</u> they were classified as independent contractors.

It is well established that a plaintiff cannot simply rely on allegations in a complaint to support a motion for conditional certification.  <u>D'Anna</u>, 903 F. Supp. at 893.  Yet, that is precisely what Plaintiffs attempt to do in this case.  Accordingly, Plaintiffs have not met their burden of producing a factual basis from which the Court can determine if similarly situated employees exist. <u>See</u> <u>EZ Storage</u>, 2011 U.S. Dist. LEXIS at *6 (plaintiffs, as the parties seeking

- 18 -

conditional certification," bear the burden of showing that their claims are 'similarly situated'").[11]

### B.   Even if the Court Finds That Plaintiffs Met Their Burden, This Case Is Not Suitable for A Collective Action.

Even if Plaintiffs could sufficiently support their allegations and this Court were persuaded that Plaintiffs have met their burden, this action is <u>not</u> suitable for class certification because of the individualized factual and legal issues presented by Plaintiffs': (1) "joint employer" theory; and (2) off-the-clock allegations. <u>See</u> <u>Westat</u>, 756 F. Supp. 2d at 689-690 (a court should consider the question of manageability at the notice stage.)

### 1.   Plaintiffs' "Joint Employer" Theory Cannot Be Properly Handled As A Collective Action.

Plaintiffs' joint employer theory cannot be properly tried as a collective action because proof required to resolve this critical issue cannot be applied to the class as a whole.  In this case, Plaintiffs allege that CCI is a joint employer with Servicemax (at the Johns Hopkins site) and FAS (at the Walter Reed site) and Chesapeake (at both sites).  As explained below, if the Court grants conditional certification, this issue <u>will</u> require testimony, proof, and analysis of multiple factors based on the facts and circumstances of each site, each subcontractor, worker-by-worker, and whether CCI's relationship with each subcontractor changed over time (which it did).[12]

Claims under the FLSA may only be brought in the context of an employer/employee relationship.  <u>See</u> 29 U.S.C. § 216(b).  Plaintiffs expend a great deal of effort in their declarations to convince the Court that CCI is a joint employer of the subcontractors.  The Complaint is also riddled with similar allegations.  Second Am. Compl. ¶¶ 38, 40-63; 67-78.  Plaintiffs' focus on

---

[11] As stated, the issue is whether Plaintiffs have supported their allegations with sufficient factual support as to each Defendant employer.  Opt-in notices, without more, do nothing to further this analysis.

[12] For example, CCI's relationship with Servicemax changed after Servicemax agreed to perform the framing related work in October 2009.

joint employment backfires because it only serves to highlight the fact that this action is not suitable for conditional certification.[13]

To determine whether an entity is a joint employer, a court must take into account the "real economic relationship" between the employee, employer, and putative joint employer. Schultz v. Capital Int'l Sec. Inc., 466 F.3d 298, 306 (4th Cir. 2006); Jacobson v. Comcast Corp., 740 F. Supp.2d 683, 688 (D. Md. 2010).   When evaluating a putative joint employment relationship, courts must effectuate the broad scope of the FLSA, while not construing the statute so broadly as to subsume typical independent contractor relationships. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 76 (2nd Cir. 2003).  Therefore, the economic reality test "is intended to expose outsourcing relationships that lack a substantial economic purpose, but it is manifestly not intended to bring normal strategically oriented contracting schemes within the ambit of the FLSA." Id.

"There is no mechanical test to evaluate the 'economic reality' between employees and putative joint employers" Jacobson, 740 F. Supp.2d at 689.  Courts have largely applied some variation of the following four factors:

1)   Authority to hire and fire employees;

2)   Authority to supervise and control work schedules or employment conditions;

3)   Authority to determine the rate and method of payment; and

4)   Maintenance of employment records.

Jackson v. Mayor of Baltimore, 2009 U.S. Dist. LEXIS 59787 (D. Md. 2009).  Where these four factors have been inconclusive, courts have looked at various miscellaneous factors.  Jacobson,

---

[13] CCI does not suggest that joint employer issues always defeat conditional certification.  Here, however, Plaintiffs allege that CCI is a joint employer with three subcontractors at two different sites.

740 F. Supp.2d at 689.  Thus, the question of joint employment turns on the entire relationship, "viewed in its totality." 29 C.F.R. §825.106(b).

Bamgbose v. Delta-T Group, Inc., 684 F. Supp.2d 660, 667 (E.D. Pa. 2010), is instructive because there the court denied a motion for conditional certification under similar circumstances. As explained in Bamgbose, whether a plaintiff is similarly situated to those whom he or she seeks to represent turns on the proof required to demonstrate liability on the claims alleged. 684 F. Supp.2d 660, 667 (E.D. Pa. 2010).  In that case, a healthcare worker sued his temporary staffing agency, Delta-T, claiming that it had misclassified him as an independent contractor and had failed to pay him overtime under the FLSA.  Bamgbose sought to have the case conditionally certified on behalf of other health care workers who worked more than 40 hours per week within the applicable time period.[14]  Id. at 667.  He argued that the putative collective action members were similarly situated because Delta-T had a uniform policy of classifying all healthcare workers as independent contractors, and had common payment procedures, intranet and telephone systems.  Id. at 668.  The court disagreed, explaining that whether the class was similarly situated depends on whether the proof required to resolve the merits can be applied to the class as a whole:

> The Court must analyze whether the healthcare workers are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors.  The Court cannot only look to Delta-T's uniform classification of the workers or its common payment procedures, intranet, and telephone systems.  Instead, it must determine whether the proof to demonstrate that the workers are "employees" or "independent contractors" can be applied to the class as a whole.

Id. at 668-669.

---

[14] In support of his motion for conditional certification, Bamgbose attached twenty-three declarations from allegedly similarly situated health care workers, among other evidence.  Id. at 663.  Yet, the court still held the case was not suitable for conditional certification.

- 21 -

The court would apply a seven-factor test to determine whether an employment relationship (versus an independent contractor relationship) existed, and found that six of the seven factors varied depending on the worker and Delta-T's client (which could range from major healthcare institutions to family homes), and only one factor could be evaluated on behalf of all the collective action members. Id. at 670-71. The court therefore denied the motion for conditional certification, holding that it could not be maintained "when the class appears similarly situated with respect to only one factor." Id. at 671.

The case for denial of conditional certification is equally strong here. To establish that CCI was not a "joint employer," or, conversely, to demonstrate that CCI was a joint employer, the parties must focus on at least three of the four factors with respect to each plaintiff (and putative plaintiff) at two different work sites: (1) whether CCI hired them; (2) the degree to which CCI supervised and controlled their work schedules and employment conditions; and (3) whether CCI determined their rate and method of payment, as they all allege. With respect to the last factor – maintenance of employment records – that too will require an analysis of CCI's relationship with each of the three subcontractors at the two sites.

Here, the three named Plaintiffs each had varying levels of experiences and interactions with CCI. With respect to joint employment, Plaintiff Isom declares that, at the Johns Hopkins site, he was hired and supervised by CCI foreman "Matt," but he was later supervised by someone working for Servicemax. Second Am. Compl. ¶¶ 99-100; Declaration of Plaintiff Isom, ¶¶ 2-3. He declared that CCI informed him that he would receive $17.00 per hour and also told him that he would earn a piece-rate instead. Id. at ¶¶ 2-3. Yet, he was paid $15.00. Id. at ¶ 4. He claims that "Defendants" transferred him from the Johns Hopkins site to the Walter Reed site.

- 22 -

Id. at ¶ 6.  At Walter Reed, he declares that he and similarly situated employees worked "under the supervision of a CCI foreman and an FAS foreman."  Id. at ¶ 7.

Plaintiff Mancia declares that he simultaneously worked for both "CCI and FAS for several months."  Declaration of Mancia, ¶ 1.  In the Complaint, he alleges that in mid-December 2009, "he applied for work at Defendant CCI's trailer" and "spoke to Defendant CCI's foreman, who, upon information and belief, is named Luis."  Second Am. Compl. ¶ 115.  He alleges that a Defendant CCI foreman showed him "to a work area in one of the buildings that was part of the Walter Reed project."  Id. at ¶ 119.  He alleges that he was transferred from "Defendant FAS to Defendant CCI."  Id. at ¶ 124; Declaration of Mancia, ¶ 5.

Plaintiff Bouthner, on the other hand, worked directly for CCI from July 2009 through October 2009.  Second Am. Compl. ¶¶ 79, 86.  Plaintiff Bouthner declares that CCI hired him at a rate of $17.85, but only paid him $15.00.  Declaration of Plaintiff Bouthner, ¶ 2.  He also declares that "CCI and Servicemax" required him to complete a W-9 tax form.  Id. at ¶ 3.  He claims he took instruction from a CCI foreman named "Beglio" both before and after the "transfer."  Second Am. Compl. ¶ 88.  He then claims he was transferred again to Defendant Chesapeake.  Id. at ¶ 92.

Furthermore, Plaintiffs allege the following, with respect to joint employment:

- Defendants are Plaintiffs' employers and joint employers as a matter of economic reality.

- Plaintiffs and other similarly situated employees were hired by Defendant CCI and/or an Employer Subcontractor and worked under the regular supervision of CCI foremen, including but not limited to Michael Dill and Luis Cerna, a man known to the employees as "Steve," whose last name may be Lewis, as well as other men known to the employees as "Jeff," "Greg" or "Craig," "Marcelo," "Jose," "Beglio," "Matt," and "Julio."

- Defendant CCI and its superintendents, including but not limited to Kevin Minick and Jeff Minick determined the working hours for Plaintiffs and other similarly situated employees on the Construction Projects and controlled access to the Construction Projects.

- 23 -

- Defendant CCI, together with the Employer Subcontractors, kept track of Plaintiffs' and other similarly situated employees' attendance and hours by, *inter alia*, requiring the workers to input their last four social security digits and scan their hands upon entry and exit, and requiring the workers to sign in and out daily. Upon information and belief, the Employer Subcontractors' foremen reported Plaintiffs' and similarly situated employees' hours to a timekeeper for Defendant CCI.

- Defendants required Plaintiffs and other similarly situated employees to report to their work areas to work under the supervision of Defendant CCI's foremen. The Employer Subcontractors' foremen also took direction from Defendant CCI's foremen, with Defendant CCI's foremen giving day-to-day direction to the Employer Subcontractors' foremen and to Plaintiffs and other similarly situated employees.

- At all relevant times, Defendant CCI's foreman had authority to direct the work of Plaintiffs and other similarly situated employees, and CCI foremen exercised that authority on a regular basis by, for example, instructing workers to re-do tasks that the CCI foreman determined had been improperly performed by another worker.

- Defendant CCI and the Employer Subcontractors retained the ability to fire Plaintiffs and other similarly situated employees and exercised that authority on a regular basis. Upon information and belief, CCI superintendents regularly monitored the work performed, and ordered CCI foremen to terminate employees. The Employer Subcontractors likewise laid off and/or terminated employees.

- Defendants jointly controlled payroll for the Construction Projects and shifted Plaintiffs and similarly situated employees from Defendant CCI's payroll to that of an Employer Subcontractor or from one Employer Subcontractor to another. Plaintiffs and similarly situated employees who were hired by Defendant CCI and/or another Employer Subcontractor were issued paychecks by different Employer Subcontractors without any other change to the conditions of their employment. Defendants simply informed Plaintiffs and other similarly situated employees that they were no longer working for one Defendant, but were working for a different Defendant, although Plaintiffs' responsibilities and working conditions remained the same.

- As described herein, Defendants are joint employers because Plaintiffs and similarly situated employees performed work that: a) simultaneously benefited each Defendant as part of an arrangement between Defendants to share workers, and/or, b) as part of an agreement among Defendants that the Employer Subcontractors would act directly or indirectly in the interest of Defendant CCI in relation to Plaintiffs and other similarly situated employees; and/or, c) because Defendants are not completely disassociated with respect to the employment of Plaintiffs and other similarly situated employees and may be deemed to share control of the employees, directly or indirectly, by reason of the fact that the Employer Subcontractors are controlled by or under common control with Defendant CCI and each other.

Second Am. Compl. ¶¶ 40-46, 62.

By even a cursory review of Plaintiffs' declarations and the Complaint, the Court can be assured that the critical issue of joint employment is not a small part of this case.  Indeed, if the Court grants conditional certification, this issue will require testimony, proof, and analysis of multiple factors based on the facts and circumstances of each site, each subcontractor, and worker-by-worker.  Specifically, the joint employer analysis will turn on a variety of factors, including, but not limited to:  (1) the name of the person who hired them on behalf of which subcontractor; (2) who determined their rate of pay (and why does the putative plaintiff contend that CCI was involved); (3) the name of the person who regularly supervised them; (4) their own relationship with the particular subcontractor employer; (5) the name of the person(s) who conducted any daily, weekly, monthly, quarterly, or ad-hoc meetings/trainings, and whether that person differed depending on the floor or building; (6) the name of the person who set their daily work schedules (and why the putative plaintiff contends CCI was involved); (7) if their work changed, who was their new supervisor and who made that determination; (8) their daily or weekly interactions with CCI foremen, project managers, and superintendents, including the extent to which CCI instructed workers to "re-do tasks" or otherwise "regularly" direct their work, versus oversee quality; (9) whether CCI ever disciplined them, and, if so, the circumstances; and (10) whether they were ever "transferred" to CCI's payroll and, if so, under what circumstances.  In addition, each putative plaintiff will be asked whether, and to what extent, their interaction with CCI changed over time.  Furthermore, these questions, among others, will be asked of each Plaintiff (and putative plaintiff) with respect to each subcontractor that they worked for.[15]  Such individual determinations are incompatible with the congressional

---

[15] Plaintiffs cite <u>Church v. Consol. Freightways, Inc.</u>, 137 F.R.D. 294, 308 (N.D. Cal 1991) and <u>Allen v. Marshall Field & Co.</u>, 93 F.R.D. 438, 442-43 (N.D. Ill. 1982), for the unremarkable position that, in some circumstances and with appropriate factual support, courts have granted conditional certification at

objectives of a Section 216(b) collective action, particularly when one remembers that two work sites are at issue for each issue.

### 2.   Plaintiffs' Allegations of Off-The-Clock Work Are Not Appropriate for Conditional Certification.

As stated, Plaintiffs' declarations do not support their allegations that they actually worked off-the-clock in a significant and uniform way. As such, the below discussion focuses on the broad allegations contained in the Complaint, relevant principles of law, and manageability.

Courts across the country, including this Court, have recognized that even the lower threshold for conditional certification (pre-<u>Dukes</u>) is not met in off-the-clock cases in which individualized issues necessarily would predominate. For example, in <u>Castle v. Wells Fargo Financial, Inc.</u>, the plaintiffs alleged that they were denied overtime pay for off-the-clock hours worked under a "variety of different circumstances." No. C 06-4347, 2008 WL 495705, at *2 (N.D. Cal. Feb. 20, 2008). The district court recognized that conditional certification was not appropriate given the individualized nature of the allegations:

> Resolution of plaintiffs' claims would require individualized determinations, and would necessitate testimony from individual employees and their supervisors about the schedules actually worked and whether managers were aware of the overtime hours worked.

<u>Id.</u> at *5; <u>see also</u> <u>England v. New Century Fin. Corp.</u>, 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (conditional certification not appropriate in off-the-clock case in which "individual inquiries

---

different locations. As explained herein, those cases are distinguishable because, in this case, Plaintiffs have not met the burden of demonstrating that they and others worked off-the-clock and that there was an unlawful common plan or scheme. In addition, in this case, there are manageability concerns that were not raised in those cases.

must predominate...because of the different locations, managers, and factual situations involved in each location" rendering it "impossible to try" on a representational or collective basis).

In Hinojos v. The Home Depot, Inc., the plaintiffs alleged that they "regularly worked off-the-clock without compensation." 2006 WL 3712944, at *1 (D. Nev. Dec. 1, 2006). The district court denied the plaintiffs' motion to issue notice to other hourly employees:

> [W]here FLSA claims require significant individual determinations and considerations, they are inappropriate for conditional certification under § 216(b)....[R]esolution of plaintiffs' claims...would likely require testimony from individual supervisors and other employees about the circumstances allegedly giving rise to the claimed violations.

Id. at *2-3.

Similarly, Judge Messitte of this Court recently denied a motion for conditional certification in which he held that "ultimately, the adjudication of multiple claims . . . would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individual factual inquires." Westat, Inc., 756 F. Supp. 2d at 688. The underlying rationale for granting collective certification is to promote judicial economy. Where a collective action would not serve the interests of judicial economy, the Court should not authorize judicial notice to a group that is not a manageable collective.

In this case, if the Court grants conditional certification, each putative plaintiff will be required to, in addition to answering individualized questions about joint employment, answer questions, such as:  (1)  what tasks, if any, did he perform before the start of the shift; (2) how long did each task take to perform; (3) did the task vary by day, week, or month; (4) if the task did vary, how so; (5) did the amount of time each task took to perform depend on which building or floor he was assigned to; (6) was every worker required to perform a task before the start of the shift or did that vary by day, week, month, building, floor, supervisor or by site; (7) were

- 27 -

there any reasons why workers came in before their shift even on days when they were not required to come in early to perform a specific task; (8) was the worker required to attend meetings before the start of the shift; (9) how often did these pre-shift meetings occur; (10) how was it communicated that there would be a pre-shift meeting and did it vary by supervisor;  (11) were all workers required to attend pre-shift meetings or did it depend on the worker, the supervisor, the building, the floor assigned, or the site; (12) did the worker ever sign in or scan-in early and then not perform any work, and, if so, how frequently; (13) did the worker ever arrive early to socialize, read the newspaper, or drink coffee; (14) did he carpool or take public transportation; (15) how often did any other uncompensated meetings occur; (16) how long did those meetings last; (17) what tasks, if any, did he perform at the end of the shift; (18) how long did each task take to perform; (19) did the specific task vary by day, week, or month; (20) if the task did vary, how so; (21) did the amount of time each task took to perform depend on which building or floor he was assigned to; (22) was every worker required to perform a task at the end of the shift or did that vary by day, week, month, building, floor, supervisor, or by site.

Courts routinely reject motions for conditional certification in situations like these because the purpose of collective treatment is not advanced.  See Hinjos, 2006 WL 3712944, at *3 (noting that the employer would be entitled to contest individual claims by offering evidence about what individual supervisors knew and recognizing that "there would be a need for individualized determinations about each plaintiffs' claims, making collective action treatment impractical and unmanageable."); see also West v. Border Foods, Inc., 2006 WL 1892527, at *9 (D. Minn. July 10, 2006) (denying conditional certification of plaintiffs' off-the-clock claims considering "individualized nature of the alleged violations"); Diaz v. Elect. Boutique of Am., Inc., 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification

- 28 -

where plaintiff's allegations that he worked "off-the-clock" were "too individualized to warrant collective action treatment").

> **C.    Plaintiffs Have Not Met Their Burden That They Are Similarly Situated to the Proposed Class.**

Plaintiffs have failed to support their Motion for Conditional Certification. Nonetheless, Plaintiffs ask the Court to order each defendant to:

> Identify every current and former person employed by the Defendants Cleveland Construction, Inc., Servicemax, Inc., Kurt Antonio Boyd, Margaret Sherman Boyd, FAS Consultants, LLC, David R. Trent, Genie Trent, Chesapeake Firestop Products, Inc., and/or Clifford B. Smith at the Johns Hopkins Construction Project and/or the Walter Reed Construction Project Between November 18, 2007, and the present date by providing the following information.

Plaintiffs have not provided the Court with any facts to support their allegations that they worked off-the-clock.  Rather, Plaintiffs assert that "Defendants" purposefully classified them as independent contractors to avoid paying overtime.  As explained above, Plaintiffs' argument for conditional certification is baseless.  The following are additional reasons why the Court should deny Plaintiffs' Motion for Conditional Certification:

First, Plaintiffs have not alleged that either CCI or FAS classified the workers at issue incorrectly.

Second, none of the Plaintiffs have alleged or declared that they worked for Chesapeake at Walter Reed.  Even if one did, one lone declaration, without more, cannot support a motion for conditional certification as to that site.

Third, only Plaintiff Bouthner alleged that he worked for Chesapeake at Johns Hopkins, and that was for only one or two pay periods.  As such, he has not supported the Motion for Conditional Certification with respect to other workers.

Fourth, because the scope of Servicemax's work changed significantly in October 2009 and none of the Plaintiffs worked for Servicemax before that date, Plaintiffs have failed to support their allegations that the same alleged pay practices existed prior to that date. Indeed, Servicemax went from a dozen or so employees to over 100 at that time.

Fifth, neither Plaintiff Bouthner nor Plaintiff Isom worked for Servicemax longer than a few months (roughly October 2009 through mid-December 2009). As explained above, they have not sufficiently supported their Motion for Conditional Certification with respect to any of the Defendants, including Servicemax.

Sixth, Plaintiff Mancia admits that one of the subcontractors appropriately reclassified him from independent contractor to employee after a few weeks of work.

Seventh, none of the Plaintiffs alleged or declared that they worked for CCI at Walter Reed. Even if one did, one lone declaration, without more, cannot support a motion for conditional certification with respect to other workers.

Eighth, Plaintiff Bouthner is the only Plaintiff that worked for CCI at Johns Hopkins and that was for only a brief period of time (approx. 2½ months). As explained above, he has not sufficiently supported his motion for conditional certification with respect to any of the defendants, including CCI (at either site). In this regard, he has not sufficiently demonstrated that similarly situated employees existed before July 2009, from July 2009 through October 2009, and from then through the present. See, e.g., EZ Storage, 2011 U.S. Dist. LEXIS at *8-9 (this Court would not have granted plaintiff's motion for conditional certification based on one lone declaration); D'Anna, 903 F.Supp. at 891 (denying motion for conditional certification where plaintiff was sole individual involved in facts of case).

- 30 -

Ninth, Plaintiff Isom's situation differs from the other two named Plaintiffs because he is the only named Plaintiff that alleged that he was promised a piece-rate of $4.00 per sheet. This one lone declaration, without more, cannot support a motion for conditional certification on this factual basis.

**D.      Plaintiffs' Interrogatory, Notice and Consent Form Should Be Rejected, Plaintiffs' Request for Confidential Employee Information Should Be Denied, and Plaintiffs' Use of Potential Opt-In Contact Information Should Be Limited.**

Should the Court ultimately determine that conditional certification of this action is warranted, the Court should nevertheless reject Plaintiffs' Interrogatory, proposed "Important Notice of Overtime Wages Lawsuit," and Consent Form. [Dkt. Nos. 52 and 53].

**1.      The Notice Should Be Limited To Workers Who Were Allegedly Misclassified From October 1, 2009 through December 31, 2010.**

Plaintiffs ask the Court to order that each defendant identify all "persons" that worked at Johns Hopkins and Walter Reed from November 18, 2007 through the present. [Dkt No. 52, Proposed Interrogatory]. Plaintiffs' Notice, on the other hand, states that they seek to represent "all present and former non-exempt employees . . ." [Dkt No. 53, Notice]. The Interrogatory and Notice should be limited to only similarly situated employees that were allegedly incorrectly classified as independent contractors. In addition, the Interrogatory and Notice should be limited from October 1, 2009 through December 31, 2010 since that is the only period of time in which Plaintiffs were allegedly misclassified, and Plaintiff Mancia admits that he was reclassified as an employee in mid-December 2010. Lastly, but no less importantly, the Interrogatory and Notice should be limited to carpenters and laborers who were incorrectly classified, and not to "every present and former non-exempt employee . . ." [Dkt. No. 53, Notice].

- 31 -

### 2.      Plaintiffs' Request for Confidential Information Regarding Defendants' Employees Is Overbroad and Should Be Denied.

In their Motion, Plaintiffs request that Defendants be ordered to produce a list of: (a) telephone numbers; (b) social security numbers; and (c) date of birth. [Dkt. No. 52, Interrogatory].  If the Court determines that notice should issue, and the production of identifying information regarding current and former employees is warranted, the Court must balance the need to promote effective case management, prevent potential abuse, and protect the rights of all parties in deciding the scope of information to be disclosed.  See Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 305 (D. Colo. 1998); see also Cook v. Yellow Freight Sys., Inc., 132 F.R.D. 548, 552 (E.D. Cal. 1990) ("[E]ven where the balance weighs in favor of disclosure of private information, the scope of disclosure will be narrowly circumscribed; such an invasion of the right to privacy must be drawn with narrow specificity and is permitted only to the extent necessary for a fair resolution of the lawsuit.") (citation omitted).

The privacy interests of prospective class members must also be respected, such that telephone numbers for the putative opt-in class should not be disclosed to Plaintiffs. See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (defendant should not provide private information such as social security numbers, telephone numbers, work location and dates of employment for notification purposes); see also Wren v. RGIS Inventory Specialists, Case No. C-06-05778 JCS, 2007 U.S. Dist. LEXIS 95439, *11 (N.D. Cal., December 19, 2007) (ordering that contact information for prospective class members be produced to a third-party administrator to issue notice in order to protect class member privacy); Hintergerger v. Catholic Health Sys., et al., Civil Action No. 8-CV-380S, 2009 U.S. Dist. LEXIS 97944, at *36  (W.D.N.Y. Oct. 21, 2009) ("The Court agrees that, in the interest of privacy, CHS need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses."); Aguilar

- 32 -

v. Complete Landsculpture, Inc., 2004 U.S. Dist. LEXIS 20265 *17-18 (N.D. Tex., Oct. 7, 2004) (denying Plaintiff's request for putative plaintiffs' telephone numbers where there was no reason to conclude that sending a letter to the last known addresses would be inadequate). In this case, Plaintiffs would obtain the last known address for all of the Court-ordered similarly situated employees during the relevant time period. There is no reason to expect that mailing the notice by first-class mail would be inadequate. Moreover, Court-approved mailings ensure that no undue verbal pressure, or the appearance of same, can be generated.

In addition, the Court should deny Plaintiffs' request to obtain the social security numbers and dates of birth of current and former full-time employees. See, e.g., Cook, 132 F.R.D. at 552 (limiting disclosure of identifying information to name and address for purposes of notice). This extremely private and confidential information is not necessary for plaintiffs in FLSA actions. See Padberg v. McGrath-McKechnie, 2007 WL 2295402, * 3-4 (E.D.N.Y., Aug. 9, 2007) (refusing to order disclosure of social security numbers from defendant because the intrusion on employees' significant privacy interests was not warranted, and finding that plaintiff's argument that equipped with social security numbers he would be able to locate substantial numbers of individuals who did not respond to notice mailed to last known addresses was speculative).

Plaintiffs also ask for: (a) employment status (current v. former); (b) dates of employment; (c) rates of pay; and (d) position(s) held. This information has nothing whatsoever to do with the Court-assisted notice procedure. If, and when, any putative plaintiffs opt-in to this action, the parties will engage in discovery with respect to those individuals. Until then, there is no legitimate reason for Defendants to provide this information to Plaintiffs.

- 33 -

Lastly, Plaintiffs ask the Court to order Defendants to provide this information within seven days of the Court's Order.  Given that Defendants do not know whether the Court will grant Plaintiffs' Motion for Conditional Certification in the first place or know how broad or limited the Court's Order will be, it is unrealistic to expect that Defendants can obtain the information within seven days.  As such, CCI requests a period of 21 days to provide Plaintiffs with the information, if ordered by the Court.

> **3.      Plaintiffs' Use of Prospective Class Members' Contact Information Should Be Limited.**

As stated above, Plaintiffs seek telephone numbers for prospective class members.  If the Court authorizes Notice and grants Plaintiffs' request for class members' telephone numbers, CCI requests that the Court establish clear parameters defining the manner in which prospective class members' contact information may be used.  Here, Plaintiffs ask the Court to permit them to contact employees by telephone "<u>after</u> the mailing of the Official Notice and Opt-in form to verify receipt and to answer any questions."  <u>See</u> Plaintiffs' Proposed Order (emphasis added). Plaintiffs' request to solicit employees in the "guise" of verifying receipt and to answer questions is wholly improper and violates Rule 7.3 (Direct Contact with Prospective Clients) of the Maryland Lawyer's Rules of Professional Conduct.

CCI requests that the Court enter an Order: (1) restricting Plaintiffs' use of prospective class members' contact information for the purpose of sending notice of the action only; and, (2) restricting Plaintiffs' communications with prospective class members to issuance of an approved notice by mail, on one occasion only.  These parameters are consistent with the manner in which notice has been authorized by other courts. See <u>Calderon v. Geico Gen. Ins. Co.</u>, 2011 U.S. Dist. LEXIS 2815, *25, (D. Md. 2011) (disclosure of class members' telephone numbers "is not appropriate"); <u>Hipp</u>, 164 F.R.D. at 576 (authorizing use of employee contact information for

purposes of issuing written notice on one occasion, and stating that "any other communication between the Plaintiffs or their counsel and these sought after parties is strictly prohibited by this court.").

In addition to legitimate privacy concerns of prospective plaintiffs, Plaintiffs' rationale for requesting the telephone numbers violates Rule 7.3 (Direct Contact with Prospective Clients) of the Maryland Lawyer's Rules of Professional Conduct.  Rule 7.3 provides, in relevant part:

(a)    A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:

(1)    is a lawyer; or

(2)    has a family, close personal, or prior professional relationship with the lawyer.

(b)    A lawyer shall not solicit professional employment from a prospective client by written, recorded or electronic communication or by in-person, telephone, or real-time electronic contact even when not otherwise prohibited by paragraph (a), if:

(1)    the lawyer knows or reasonably should know that the physical, emotional or mental state of the prospective client is such that the prospective client could not exercise reasonable judgment in employing a lawyer;

(2)    the prospective client has made known to the lawyer a desire not to be solicited by the lawyer; or

(3)    the solicitation involves coercion, duress, or harassment.

THE MARYLAND LAWYER'S RULES OF PROF'L CONDUCT, R. 7.3.    In turn, comment two to Rule 7.3 provides:

> This potential for abuse inherent in direct in-person, live telephone or real-time electronic solicitation of prospective clients justifies its prohibition, particularly since lawyer advertising and written and recorded communication permitted under Rule 7.2 offer alternative means of conveying necessary information to those who may be in need of legal services. Advertising and written and recorded communications which may be mailed or autodialed make it possible for a prospective client to be informed about the need for

- 35 -

> legal services, and about the qualifications of available lawyers and
> law firms, without subjecting the prospective client to direct in-
> person, telephone or real-time electronic persuasion that may
> overwhelm the client's judgment.

Id at comment 2.

In short, Plaintiffs' counsel may not solicit prospective plaintiffs, and there is no legitimate reason to provide Plaintiffs' counsel with prospective plaintiffs' phone numbers. Those individuals who choose not to respond to the Court-facilitated Notice must be left alone.

### 4.    Plaintiffs' Request for Posting Should Be Denied.

Plaintiffs also contend that Defendants should be compelled to "visibly post the notice to reassure current employees that the Defendants will comply with the law and will not subject Defendants' present and former employees to retaliation." Motion for Conditional Certification, at p. 9. Plaintiffs' request should be rejected because courts have held that such posting, under the facts of this case, is unreasonable and unnecessary. Moreover, an order compelling such posting would violate Defendants' First Amendment right against compulsion to engage in speech with which it disagrees.

First-class mailing of the Notice is the preferred method and alternative forms of notification (such as posting of the notice) should not be used unless plaintiffs presents facts showing that other methods are necessary. See Lewis v. The Huntington National Bank, Civil Action No. C2-11-cv-0058,  2011 U.S. Dist. LEXIS 65068, (D.Ohio June 20, 2011) (denying plaintiff's request to post notice); Shajan v. Barolo, Ltd., et al., Civil Action No. 10-cv-1385, 2010 U.S. Dist. LEXIS 54581, at *5 (S.D.N.Y. June 2, 2010) (same); Hintergerger, 2009 LEXIS 97944, at *40-41 (same).  Courts have noted that the only group likely to be reached by posting in an employer's place of business are current employees, and it is clear that an employer will be able to provide accurate mailing addresses for current employees, making such posting at the

- 36 -

place of business unnecessary. See Shajan, 2010 LEXIS 54581, at *5 ("Since all current employees will be receiving the notice [via first-class mailing], there is no need to require defendants to post the notice in the workplace."); Gordon, et al. v. Kaleida Health, et al., 08-CV-378S, 2009 U.S. Dist. LEXIS 95729 at *35-36 (W.D.N.Y. Oct. 14, 2009) ("Moreover, the only group that will be reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address. . . . For the reasons stated, I find that first class mail is the 'best notice practicable' and should be sufficient to provide potential class members here the notice to which they are entitled.").

Accordingly, posting of the Notice is unnecessary, and Plaintiffs' request should be denied.  Plaintiffs' request that CCI post the proposed Notice in its workplaces must also be rejected because such an order would violate CCI's First Amendment rights. The United States Constitution safeguards not only the right to speak, but also protects against compulsion to disseminate a message with which one disagrees. See Wooley v. Maynard, 430 U.S. 705, 714 (1977) (First Amendment guarantee "includes both the right to speak freely and the right to refrain from speaking at all."). In Pac. Gas & Elec. Co. v. Pub. Util. Comm'n, 475 U.S. 1, 15 (1986), the Supreme Court held that requiring a litigant to include its adversary's views in its billing, "impermissibly requires [the litigant] to associate with speech with which [the litigant] may disagree." The proposed posting of the Notice in CCI's workplaces unnecessarily seeks to require CCI to disseminate a message to persons outside the putative class and with which it disagrees. Even if CCI's right not to disseminate speech with which it disagrees is not absolute, Supreme Court precedent requires that any order burdening the exercise of free speech must be narrowly tailored to serve a compelling state interest. Id. at 19. The posting of the Notice

requested by Plaintiffs is certainly not narrowly tailored because it would be broadcast to many more individuals than is necessary (i.e., non-class members or the general public).

     **5.**     **Plaintiffs' Notice Is Overly Broad, Misleading, and Should Contain Additional Information.**

     Plaintiffs' proposed description of the lawsuit is overly broad, misleading, and should contain additional information.  [Dkt No. 53, Notice].

     First, Plaintiffs' Notice should advise potential opt-in plaintiffs that they could be held liable for costs.  "Being made aware of the possibility of being held liable for [defendant's] costs of litigation is necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff."  Heaps v. Safelight Solutions, LLC, et al. Civil Action No. 2:10-cv-729 2011 U.S. Dist. LEXIS 40089, *21 (D.Ohio Apr. 5, 2011); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003) (adding to the Notice a statement that "You may also be held liable for costs associated with this lawsuit").  Thus, under the Effect of Joining the Lawsuit section, if the Notice is approved at all, the following sentence should be added:  "You may also be held liable for costs associated with this lawsuit."

     Second, the Court should strike "CCI Overtime Lawsuit" throughout the Notice and Opt-in Form.  There are several defendants, and CCI should not be singled out.

     Third, the Court should strike, "IMPORTANT NOTICE OF OVERTIME WAGES LAWSUIT."  The statement is overly solicitous.

     Fourth, for the reasons set forth above, the Notice should be revised to include only carpenters and laborers who were allegedly misclassified from October 1, 2009 through December 31, 2010.

     Fifth, the language in the Description of the Lawsuit section is overly broad because it includes allegations concerning alleged state law wage and hour violations and Plaintiffs' filed

their motion for conditional certification under the FLSA only. Indeed, the FLSA is the only body of law that applies now at Walter Reed. As such, CCI recommends deleting all references to "regular time hours" and "benefits."

Sixth, the last sentence in the first paragraph of the Description of the Lawsuit section should be deleted because it is not accurate and overbroad. The Court should strike references to "unpaid wages" because Plaintiffs are seeking overtime pay only in their Motion for Conditional Certification. In addition, Plaintiffs are not seeking to represent all "former and current employees of Defendants who were not paid for all of the work they performed." As such, that statement is also overbroad. The Notice should address overtime pay only for the workers at issue.

Seventh, the second paragraph under the Description of the Lawsuit section should be limited to the relevant period the Court orders, which may not be from November 18, 2007 to the present. This should be consistent throughout the Notice.

Eighth, the Nature of the Lawsuit and Relief Sought section should be revised because, as stated, it is inappropriate for Plaintiffs to include any reference to wages other than "overtime pay," such as "regular" wages and the word "generally" should be stricken from Defendants' position. CCI also recommends that the first paragraph of this section read: "In this lawsuit, three Plaintiffs complain that Defendants classified them incorrectly as independent contractors and failed to pay them overtime pay. Defendants maintain that they complied with the law and that you were lawfully compensated for your overtime work."

Ninth, under the Effect of Not Joining the Lawsuit section, the Court should strike, "In the event that you decide not to file a Consent to join the lawsuit, the statute of limitations will continue to run until such time as you file a lawsuit on your own behalf. You should consult

- 39 -

with your own attorney as to the statute of limitations that would apply to any claim you may have."   This statement is tantamount to providing legal advice, which is not appropriate. Moreover, the Notice already provides a statute of limitations explanation.  There is no need for this to be repeated or transformed into advice.

Tenth, the Opt-In Form must also be revised. Again, all references to "CCI Overtime Lawsuit" are inappropriate and place an unfair focus on CCI.  In addition, the Opt-In Form should reference overtime pay only, not "unpaid compensation." Moreover, the Court should add the following sentence in Number 4, "You may also be held liable for costs associated with this lawsuit." This is appropriate because this paragraph addresses an opt-in plaintiff's understanding of costs, settlement, attorney's fees, etc. Furthermore, the Court should strike the statement that opt-ins should "return this form as soon as possible to preserve your rights" because it is overly solicitous.

Lastly, Plaintiffs request that: (1) putative Plaintiffs return the Opt-in form 35 days from the date of notice; and (2) the Court permit them to mail a version of the Notice in Spanish.  CCI does not object to either request.   However, should the Court determine that conditional certification of the action is warranted, CCI respectfully requests that the Court order Plaintiffs to submit a revised Notice (in Spanish and English) to Defendants for review and, if there are any disputes, the parties should submit a joint status report to the Court.

**V.     CONCLUSION**

Based on the foregoing arguments and authorities, CCI respectfully requests that the Court deny Plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees, or, alternatively, grant the modifications explained herein.

August 1, 2011                              Respectfully submitted,


                                       /s/ Steven E. Kaplan
_____
                                         Joseph P. Harkins (Federal Bar No. 14007)
                                         Steven E. Kaplan (Federal Bar No. 16531)
                                         LITTLER MENDELSON, P.C.
                                         1150 17th Street, N.W.
                                         Suite 900
                                         Washington, DC  20036
                                         202.842.3400  Telephone
                                         202.842.0011  Facsimile
                                         jharkins@littler.com
                                         skaplan@littler.com

                                         Counsel for Defendant
                                         Cleveland Construction, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2011, I electronically filed the foregoing Cleveland Construction, Inc.'s Opposition to Plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

R. Scott Oswald
Nicholas Woodfield
The Employment Law Group, P.C.
Washington, DC 20006

*Counsel for Plaintiffs*

Jeffrey W. Larroca
Andrew T. Quesnelle
Eckert Seamans Cherin and Mellott LLC
1717 Pennsylvania Ave, NW, 12th Fl.
Washington, DC 20006

*Counsel for FAS Consultants, LLC, David R. Trent, and Genie A. Trent*

Andrew N. Cook
Brian W. Stolarz
K&L Gates
1601 K Street, NW
Washington, DC 20006

*Counsel for ServiceMax, Inc., Kurt A. Boyd, and Margaret S. Boyd*

Sally Dworak-Fisher
Andrea J. Vaughn
Public Justice Center
One North Charles Street, Suite 200
Baltimore, MD 21201

*Counsel for Plaintiffs*

Amir Gibbs
The Gibbs Law Firm
One Research Court, Suite 450
Rockville, MD 20850

*Counsel for Chesapeake Firestop Products, Inc., and Clifford Smith*

/s/ Steven E. Kaplan
Steven E. Kaplan