IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EUGENE V. BOUTHNER, JR., ET AL. | * | |
| PLAINTIFFS, | * | |
| V. | * | CIVIL ACTION NO.: RDB-11-0244 |
| CLEVELAND CONSTRUCTION, INC., ET AL. | * | |
| | * | |
| DEFENDANTS. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Eugene V. Bouthner, Jr., Paul J. Isom and Jose M. Mancia (collectively, "Plaintiffs") bring this action on behalf of themselves and other similarly situated employees and/or former employees against Defendants Cleveland Construction, Inc. ("CCI"), Servicemax, Inc., Kurt Antonio Boyd, Margaret Sherman Boyd, FAS Consultants, LLC ("FAS"), David R. Trent, Chesapeake Firestop Products, Inc. ("Chesapeake"), and Clifford B. Smith (collectively, "Defendants"). The Plaintiffs are hourly wage earners who worked for Defendants on construction projects located at the National Naval Medical Center in Bethesda, Maryland, and the Johns Hopkins Hospital in Baltimore, Maryland. In Count I, Plaintiffs allege that they were misclassified as independent contractors in violation of the Maryland Workplace Fraud Act, MD. CODE ANN., LAB. & EMPL., § 3-901, *et seq.* In Count II, Plaintiffs claim that they were not paid minimum wage and overtime pay in violation of the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL., § 3-401, *et seq.* In Count III, Plaintiffs assert that they were not paid their full measure of wages for all time

worked in violation of the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL., § 3-501, *et seq.*   In Count IV, Plaintiffs contend in the alternative that Defendants had a contractual and equitable obligation to compensate them for their unpaid wages and overtime, and therefore are liable in quantum meruit.   In Count V, Plaintiffs argue that Defendants failed to pay them regular and overtime wages in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*

The original complaint was filed in the Circuit Court for Baltimore City, Maryland on November 18, 2010.   Defendants removed the case to this Court on January 28, 2011, pursuant to 28 U.S.C. §§ 1332 and 1441, as amended by the Class Action Fairness Act of 2005, 28 U.S.C. § 1453.   On February 16, 2011, the Plaintiffs filed a Second Amended Complaint in order to include their overtime claim under the Fair Labor Standards Act ("FLSA").   On February 28, 2011, Defendant CCI filed a motion to partially dismiss the Plaintiffs' Second Amended Complaint on the grounds that some of the Plaintiffs' claims were precluded by the federal enclave doctrine, and that the Plaintiffs' claim for quantum meruit was preempted by the FLSA.   The other Defendants filed separate but similar motions to partially dismiss the Second Amended Complaint.   On July 21, 2011, this Court granted the Defendants' motions for partial dismissal.   *See Bouthner v. Cleveland Constr., Inc.*, No. RDB-11-0244, 2011 WL 2976868 (D. Md. Jul. 21, 2011).

As a result of this Court's prior ruling, the following claims remain: (1) Plaintiffs' state law claims in Counts II and IV as they pertain to the work done on Johns Hopkins by all Defendants, (2) Plaintiffs' state law claims in Counts I (Maryland Workplace Fraud Act) and III (Maryland Wage Payment and Collection Law) as they pertain to the work done on Johns

Hopkins Hospital by the Corporate Defendants—Cleveland Construction, Inc., Servicemax, Inc., FAS Consultants, LLC, and Chesapeake Firestop Products, Inc., and (3) Plaintiffs' federal claims in Count V (Fair Labor Standards Act) as to all Defendants.

Presently pending is Plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees.  Pls.' Mot., ECF No. 50.  Plaintiffs' motion seeks conditional certification, pursuant to § 216(b) of the FLSA,[1] of a class of current and former employees of the multiple Defendants who were allegedly denied overtime compensation by the various Defendants.  This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Plaintiffs' motion for conditional class certification (ECF No. 50) is DENIED. Moreover, the Plaintiffs' Motion to Toll the Statute of Limitations for Claims Asserting Violations of the Fair Labor Standards Act (ECF No. 104) is DENIED as MOOT; Defendants FAS and David Trent's Motion to Strike (ECF No. 115) is DENIED as MOOT; and Defendant CCI's Consent Motion for Leave to File Sur-Reply (ECF No. 120) is GRANTED.

## BACKGROUND

Defendant Cleveland Construction, Inc. is a general construction contractor that performed various construction services at the two construction sites at issue in this

---

[1]  As will be discussed *infra*, collective action lawsuits brought pursuant to the Fair Labor Standards Act differ from the more common class action suits brought under Rule 23 of the Federal Rules of Civil Procedure.  Notwithstanding the differences, collective actions do "behave in many ways like Rule 23 class actions."  7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807 (3d ed. 2005).

litigation—the National Naval Medical Center ("NNMC") in Bethesda, Maryland, and the Johns Hopkins Hospital ("Hopkins") in Baltimore, Maryland.  Generally speaking, CCI was the contractor responsible for "inside work," *i.e.*, dry wall installation, framing, etc., at the two construction sites.  Defendant Servicemax, Inc. is a subcontractor that was employed by CCI to perform inside work at the Hopkins site.[2]  CCI originally subcontracted dry wall work to Servicemax in May of 2008, but in October of 2009, the scope of work performed by Servicemax expanded significantly, and whereas CCI had been performing interior framing on the project, that work was taken over by Servicemax.  Accordingly, CCI terminated its employees that had been performing this framing work, and many of them were then hired by Servicemax.  According to Servicemax, at some point after taking over the framing work from CCI, it then subcontracted that work to Defendant Chesapeake.  *See* Servicemax Opp'n at 2-3, ECF No. 73.

From March 2009, through January 2010, CCI subcontracted the dry wall work at the NNMC site to Defendant FAS.[3]  In January 2010, the contract ended, and CCI subcontracted the same work to Defendant Chesapeake.[4]

The Plaintiffs allege that they, and similarly situated employees, were employed by the Defendants to perform construction services at the NNMC and Hopkins construction sites.  Plaintiff Bouthner alleges that he worked for Defendant CCI at the Hopkins site from July 2009 through October 2009.  Bouthner Decl. ¶ 1.  Bouthner claims that he was hired by CCI

---

[2]  Defendants Kurt Antonio Boyd and Margaret Sherman Boyd are, respectively, the President and Secretary of Servicemax.  *See* Second Am. Compl. ¶¶ 22, 24.

[3]  Defendant David R. Trent is an owner and officer of FAS.  *See* Second Am. Compl. ¶ 29.

[4]  Defendant Clifford B. Smith is the President of Chesapeake.  *See* Second Am. Compl. ¶ 34.

at a rate of $17.85 per hour, but was only paid $15.00 per hour. *Id.* ¶ 2. In October of 2009, Bouthner claims that he "and more than one hundred of his similarly situated fellow employees that they were suddenly employees of Defendant Servicemax, instead of Defendant CCI." Pls.' Mot. at 2. Bouthner claims that Servicemax required him to fill out a W-9 tax form applicable to independent contractors. Bouthner Decl. ¶ 3. Bouthner claims that sometime in December of 2009, he received a Form 1099 from Defendant Chesapeake. *Id.* ¶ 7. Moreover, Bouthner alleges that both CCI and Servicemax required him and similarly situated employees to perform pre-shift work and were required to attend meetings after normal business hours. *Id.* ¶ 5. In short, Bouthner claims that he and similarly situated employees regularly worked in excess of forty hours per week and were not compensated at a rate of one and a half times their normal hourly rates for that overtime work.

Plaintiff Isom claims that he worked for both CCI[5] and Servicemax for approximately three months. Isom Decl. ¶ 1. During these three months, Isom worked at both the NNMC and the Hopkins construction sites. *Id.* Isom alleges that at times he was paid an hourly rate of $15.00 per hour, and at other times was paid a piece rate. *Id.* ¶¶ 2-4. Isom claims that when he received a piece rate, he was compensated at a rate below minimum wage. *Id.* ¶ 5. Isom began work at the Hopkins site, but in December 2009, was transferred to the NNMC site, and allegedly worked under the supervision of a CCI foreman and an FAS foreman. *Id.* ¶¶ 6-7. Isom claims that neither Servicemax nor CCI withheld taxes from his paycheck—instead, he claims he was classified as an independent contractor and received paychecks with the notation "Contract Labor & 1099's" in the check description. *Id.* ¶ 8.

---

[5] CCI disputes this contention, and maintains that Plaintiff Bouthner is the only plaintiff to have worked directly for CCI. *See* CCI Opp'n at 7 n.3, ECF No. 72.

Finally, Isom claims that he was not paid overtime for hours worked in excess of forty per week. *Id.* ¶ 9.

Plaintiff Mancia claims that in December 2009, he applied for work with CCI at the NNMC site. Mancia Decl. ¶ 1. Mancia claims that he was hired by both CCI and FAS, and worked for both entities for several months. *Id.* Mancia claims that CCI and FAS did not pay him at a rate of one and a half times his normal hourly wage for overtime work. *Id.* ¶ 3. Additionally, while Mancia alleges that during the first few weeks of his employment he was classified as an independent contractor, he states that he was transferred from Defendant FAS to Defendant CCI whereupon he was then classified as an employee. *Id.* ¶¶ 4-5.

Broadly speaking, the Plaintiffs claim that Defendants (1) misclassified Plaintiffs and the subclass as independent contractors or exempt persons in violation of the Maryland Workplace Fraud Act ("MWFA"); (2) did not compensate Plaintiffs and the class at the minimum wage for each hour worked in violation of the Maryland Wage and Hour Law ("MWHL"), (3) failed to timely and regularly pay Plaintiffs their earned wages in violation of the Maryland Wage Payment and Collection Law ("MWPCL"), and (4) failed or refused to pay them regular and overtime wages in violations of the Fair Labor Standards Act ("FLSA"). Regarding their FLSA claims, the Plaintiffs contend that CCI is a joint employer with Servicemax at the Hopkins site, a joint employer with FAS at the NNMC site, and a joint employer with Chesapeake at both sites.

**STANDARD OF REVIEW**

Collective action lawsuits brought under the Fair Labor Standards Act have been described as "a unique species of group litigation" that differs from the more common class action suits brought under Rule 23 of the Federal Rules of Civil Procedure. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807 (3d ed. 2005). Under the FLSA, a plaintiff may bring an action on behalf of himself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b) (A FLSA collective action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). *See also Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008) ("The paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'") As this Court has previously indicated, a two-step inquiry is employed in deciding whether to certify a collective action under the FLSA:[6]

---

[6] Defendant CCI suggests that this Court modify its traditional two-step inquiry in light of the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011). More specifically, while *Dukes* was decided under Fed. R. Civ. P. 23 and was based on claims of sexual discrimination under Title VII of the Civil Rights Act of 1964, CCI contends that the higher standard articulated by the Court in *Dukes*, regarding what constitutes sufficient commonality for class certification, should displace the more lenient two-step inquiry normally undertaken in Fair Labor Standards Act collective action cases. *See* CCI Opp'n at 11. However, insofar as this Court concludes that the Plaintiffs have failed to meet their burden of showing that their claims are "similarly situated" under the traditional approach, it need not definitively determine whether application of the *Dukes* standard is required. *See Faust v. Comcast Cable Commc'n Mgmt., LLC*, No. WMN-10-2336, 2011 WL 5244421, at *1 n.1 (D. Md. Nov. 1, 2011) (declining to allow further briefing regarding the applicability of *Dukes* to a FLSA action concerning certification of a collective action for unpaid overtime wages) (citations omitted).

First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.

*Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The second, more "stringent" phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and is often referred to as the "decertification stage." *See Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010).

Generally, plaintiffs bear the burden of showing that their claims are "similarly situated," but courts have ruled that "similarly situated" need not mean "identical." *See, e.g.*, *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Nevertheless, district courts have broad discretion to determine whether a collective action is an appropriate means for prosecuting an FLSA cause of action. *Id.* at 1219; *see also Syrja*, 756 F. Supp. 2d at 686 (citing *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D.Va. 2006)); 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807, n.44 (3d ed. 2005). Although the United States Court of Appeals for the Fourth Circuit has not defined the phrase "similarly situated," this Court has held that a group of FLSA plaintiffs is similarly situated if they can show they were victims of a common policy, scheme, or plan that violated the law. *Mancía v. Mayflower Textile Servs. Co.*, No. CCB-08-273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008). To make this showing, Plaintiffs allegations "must consist of more than 'vague allegations' with 'meager factual support,' but

it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Id.* at *2 (quoting *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995). Moreover, "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright." *Syrja*, 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)). Plaintiffs may rely on "affidavits or other means" to make the required showing. *Williams*, 585 F. Supp. 2d at 683; *Dorsey v. The Green Turtle Franchising Corp.*, No. CCB-10-92, 2010 WL 3655544, at *1 (D. Md. Sept. 14, 2010).

This Court has previously held that consideration of issues relating to the manageability of a proposed collective action is appropriate at the notice stage of a FLSA action. For example, in *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995), this Court noted that "[a]s a matter of sound case management, a court should, before offering [to assist plaintiff in locating additional plaintiffs], make a preliminary inquiry as to whether a manageable class exists." (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (alteration in original). In making this determination, this Court further concluded that "courts, as well as practicing attorneys, have a responsibility to avoid the stirring up of litigation through unwarranted solicitation," and "an employer should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *Id.* at 894 (internal quotation marks and citation omitted). More recently, this Court reiterated its conclusion that is has a duty to address manageability concerns at the notice stage of FLSA litigation. In *Syrja v. Westat, Inc.*, Judge Messitte stated that "[u]ltimately, the significance of manageability concerns at the notice stage is, like other

aspects of the conditional certification analysis, a decision for the Court on the facts before it." 756 F. Supp. 2d at 689. In so concluding, Judge Messitte quoted from *Hoffmann-LaRoche, Inc., v. Sperling*, 493 U.S. 165, 170 (1989), in which the Supreme Court noted that in FLSA collective actions "[t]he judicial system benefits by *efficient resolution* in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Syrja*, 756 F. Supp. 2d at 689 (quoting *Sperling*, 493 U.S. at 170) (emphasis in original).

## ANALYSIS

### I. PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Congress enacted the Fair Labor Standards Act in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Pub. L. No. 75-718, 52 Stat. 1060 (1938) (codified as amended at 29 U.S.C. §§ 201 *et seq.*). To this end, the FLSA generally requires employers to compensate employees for all of the hours worked, at a rate that is not less than the federal minimum wage rate. *See* 29 U.S.C. § 206(a)(1). In addition, the FLSA provides that employers must compensate employees at "a rate not less than one and one-half times the employee's regular hourly rate" for any time the employee is required to work in excess of a 40-hour workweek. 29 U.S.C. § 207(a). Any employer who violates Sections 206 or 207 of the FLSA is liable to the affected employees for unpaid wages and liquidated damages. 29 U.S.C. § 216(b).

The Plaintiffs generally allege that the Defendants engaged in a common policy or scheme to violate the Fair Labor Standards Act to avoid paying overtime wages. More specifically, the Plaintiffs argue that the common policy or scheme entailed systematically

misclassifying employees as independent contractors, and that the Defendants routinely failed to compensate employees for pre and post-shift work. *See generally* Pls.' Mot. at 7-8. However, the Plaintiffs have provided no actual evidence to support their claims that the Defendants—eight in all—maintained any kind of policy to avoid paying overtime wages by systematically misclassifying employees as independent contractors. Instead, the Plaintiffs essentially rely on the broad allegations contained in the Second Amended Complaint and the three one-page declarations attached to their motion for conditional certification. These "vague allegations" with "meager factual support" are insufficient to support conditional certification. *See D'Anna*, 903 F. Supp. At 893-94.

Notwithstanding the fact that the Plaintiffs' burden is minimal, they have completely failed to identify any company plan or policy (of any of the eight Defendants) violative of the FLSA's overtime provisions. Aside from generally stating that they occasionally worked in excess of forty hours and did not receive overtime compensation, they can point to no overarching policy, do not identify which Defendant directed the overtime work, do not describe the nature of the work, and generally provide no supporting evidence for their allegations. What is more, Plaintiffs Bouthner, Isom, and Mancia state in their declarations that they regularly worked in excess of forty hours without overtime compensation, *see* Pls.' Declarations, ECF Nos. 50-3, 50-6. 50-9, but those allegations are contradicted by the Second Amended Complaint which states that "Defendants were aware of their overtime compensation obligations, as reflected by the fact that they did sometimes compensate Plaintiffs and other similarly situated employees at an overtime rate on occasions where

Defendants required the employees to remain working at their regular assignments well beyond their scheduled or regular work shifts . . . ."  Second Am. Compl. ¶ 61.

By way of comparison, in *Williams v. ezStorage Corp.*, No. RDB-10-3335, 2011 WL 1539941 (D. Md. Apr. 21, 2011), this Court conditionally certified a class in a case where the Plaintiffs alleged that the defendant ezStorage Corp. maintained a uniform policy whereby it would routinely demand pre and post-shift duties of its workers, and would not compensate them for the overtime.  In that case, the plaintiffs' provided specific facts demonstrating they were similarly situated.  *See id.* at *1.  Specifically, the Plaintiffs described with the minimal requisite particularity the work they performed for which they were not compensated, the uniform nature of the work, how long the work would typically take, and submitted an affidavit describing conversations with other similarly situated employees.  *Id.*  Moreover, as corroboration, the plaintiffs in *Williams* submitted the ezStorage operations manual that described the pre and post-shift work expected of ezStorage employees, and pointed to a stipulation made by the Defendant that potential opt-in plaintiffs were uniformly subject to the same policies, rules, pay systems, hours, and benefits.  *Id.* at *3.  In contrast, the Plaintiffs in this case have provided no factual support for their overtime claims aside from their broad assertion that the Defendants misclassified them as independent contractors.  What is more, Plaintiffs fail to even adequately allege how any supposed misclassification led to the Defendants' failure to pay overtime wages.

Put simply, the Plaintiffs cannot rely on allegations alone—they must put forth some factual support for conditional certification, and they have failed to do so.  As noted by this Court in *D'Anna*, "[t]he Plaintiff has the burden of demonstrating that notice is

'appropriate.' [citation omitted]  In this case, plaintiff has not met this burden."  903 F.
Supp. At 894.

Even if the Plaintiffs were able to provide sufficient factual support for their FLSA
claims, certification of a collective action is nevertheless inappropriate as a result of the
myriad of individualized factual and legal issues that would predominate.  As this Court
recently held in *Syrja*, "the question of manageability at the notice stage" is an appropriate
inquiry, and conditional certification of a collective action should not be granted if
adjudication on a class-wide basis "would require a cumbersome, individualized analysis of
each class member's particular factual circumstances."  756 F. Supp. 2d at 690.

This case involves two separate constructions sites, a general contractor, three
subcontractors, and individual Plaintiffs that worked at different locations and for different
combinations of employers.  As Defendant FAS aptly notes in its opposition brief, Plaintiffs'
motion for conditional certification "offers no consideration for the fact that there are over
seven different defendants in this case, does not adequately address the fact that there are
two different construction projects implicated in this case, and makes no allowance for the
vast and obvious differences that exist among the three Named Plaintiffs themselves, let
alone between the Named Plaintiffs and a nebulous collection of 'similarly-situated
employees.'"  FAS Opp'n at 4, ECF No. 80.

Undergirding the Plaintiffs claims, is their argument—devoid of factual support—
that the general contractor, CCI, is a joint employer with three subcontractors at two
different construction sites.  The FLSA defines "employer" to include "any person acting
directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. §

203(d).   Courts generally interpret this definition broadly, and an individual may be the employee of more than one employer at the same time.  *See Schultz v. Capital Int'l Sec. Inc.*, 466 F. 3d 298, 304 (4th Cir. 2006).   However, courts generally look at the "economic reality" of an individual's status in the workplace before determining liability. *See Schultz*, 466 F.3d at 304; *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33(1961).   While "[t]here is no mechanical test to evaluate the 'economic reality' between employees and putative joint employers," the economic reality of a joint employment arrangement may be determined by examining a number of factors such as:

1) Authority to hire and fire employees;
2) Authority to supervise and control work schedules or employment conditions;
3) Authority to determine the rate and method of payment; and
4) Maintenance of employment records.

*Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 689 (D. Md. 2010).

In this case, to determine the economic reality of the employment relationship between the Defendants and the Plaintiffs, individualized questions would necessarily predominate regarding which defendant hired each plaintiff, which defendant supervised them, which defendant determined their rate of pay, and the interaction and relationship between the individual defendant.   Moreover, because the Plaintiffs allegations span two distinct construction sites, this analysis would necessarily have to be conducted twice.

Finally, unlike cases such as *Williams v. ezStorage*, 2011 WL 1539941, where the plaintiffs alleged a broad company-wide policy to deprive employees of overtime compensation, the Plaintiffs' overtime allegations in this case would also require individualized factual inquiries.   In the Second Amended Complaint, the Plaintiffs allege that sometimes they received overtime payments, but in their declarations, they claim that

overtime was regularly withheld.   Accordingly, individualized questions of each potential plaintiff would be required to determine, *inter alia*, what pre and post-shift work was required of that employee; how long those tasks took to complete; was the overtime work regular or sporadic; who demanded the overtime work of the plaintiffs; and how the overtime work differed between the Johns Hopkins and NNMC construction sites.   In a similar case, this Court recently denied a motion for conditional certification and concluded that "the adjudication of multiple claims in this case would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries . . . .   Simply put, this is not a case that lends itself to the sort of efficient adjudication of multiple claims by 'similarly situated' persons that § 216(b) contemplates."   *Syrja*, 756 F. Supp. 2d at 688-89.   As previously noted, in the context of Section 216(b) collective action certification, the Supreme Court has cautioned that "[t]he judicial system benefits by *efficient resolution* in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."   *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (emphasis added).   This Court concludes that the adjudication of the Plaintiffs' claims in this case would be anything but efficient were this Court to conditionally certify a collective action. Therefore, Plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees (ECF No. 50) is DENIED.

## II. OTHER MOTIONS

In addition to the motion for conditional certification, the Plaintiffs have also filed a Motion to Toll the Statute of Limitations for Claims Asserting Violations of the Fair Labor Standards Act (ECF No. 104).  Plaintiffs filed this motion on October 4, 2011, requesting that this Court toll the statute of limitations for potential opt-in plaintiffs during the time it considers the Plaintiffs' motion for conditional certification.  In connection with the filing of that motion, Defendant CCI filed a consent motion to file a surreply, which was not opposed by the Plaintiffs.  That motion (ECF No. 120) is GRANTED.

As this Court noted in *Syrja*, "[a]s a rule, unknown or prospective plaintiffs in a proposed class action are not entitled to equitable tolling absent a showing of extraordinary circumstances."  765 F. Supp. 2d at 680 (citation omitted).  Moreover, Defendant CCI has persuasively argued that, insofar as the instant motion only affects hypothetical opt-in plaintiffs and not any actual party to this case, there exists no "case or controversy" under Article III of the United States Constitution.  *See* CCI Opp'n at 2-4, ECF No. 107 (citing authority).  However, as the Plaintiffs have only requested tolling of the statute of limitations while this Court considers the motion for conditional certification, the request is essentially moot.  Because this Court concludes that conditional certification is inappropriate in this case, the Plaintiffs' Motion to Toll the Statute of Limitations for Claims Asserting Violations of the Fair Labor Standards Act (ECF No. 104) is DENIED as MOOT.

Finally, Defendants FAS Consultants, LLC and David Trent have filed a Motion to Strike (ECF No. 115).  The motion seeks to strike two supplemental submissions made by the Plaintiffs in support of their motion for conditional certification.  The Plaintiffs'

supplemental submissions, ECF Nos. 96 & 103, were filed without seeking or obtaining leave of court.  Pursuant to Local Rule 105.2(a) (D. Md. 2011), surreplies "are not permitted to be filed" without leave of court, and those surreplies will be stricken.  *See Flores v. Deutsche Bank Nat. Trust, Co.*, No. DKC-10-0217, 2010 WL 2718949, at *2 n.1 (D. Md. Jul. 7, 2010) (striking surreplies filed without leave of court); *Sterling Acceptance Corp. v. Tommark, Inc.*, 227 F. Supp. 2d 454, 459 n.3 (D. Md. 2002) (same).  Accordingly, Defendant FAS Consultants, LLC and David Trent's Motion to Strike (ECF No. 115) is GRANTED.

## CONCLUSION

Because this Court concludes that the Plaintiffs have failed to provide sufficient factual support for their motion for conditional certification, and because this case would be unmanageable if certified as a collective action, this Court exercises its broad discretion and holds that Plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendants Seeking the Identity of Similarly Situated Employees (ECF No. 50) is DENIED.  Plaintiffs' Motion to Toll the Statute of Limitations for Claims Asserting Violations of the Fair Labor Standards Act (ECF No. 104) is DENIED as MOOT.  Defendants FAS and David Trent's Motion to Strike (ECF No. 115) is GRANTED, and Defendant CCI's Consent Motion for Leave to File Sur-Reply (ECF No. 120) is GRANTED.

A separate Order follows.

Dated: March 5, 2012.

/s/_____
Richard D. Bennett
United States District Judge